THE STATE v. ROLLIN BROWN, Appellant.—56 S. W. (2d) 405.

Division Two, December 14, 1932.

*L. L. Collins* and *George H. Skidmore* for appellant.

*Stratton Shartel,* Attorney-General, for respondent; *James K. Coolidge* of counsel.

COOLEY, C.—Defendant was convicted in the Circuit Court of Greene County of unlawful possession of intoxicating liquor, viz., corn whisky, and pursuant to the verdict was sentenced to six months imprisonment in jail and to pay a fine of $500. His appeal was properly granted to this court because of a constitutional question raised at the trial and preserved in the motion for new trial.

Defendant and his wife were first charged jointly by information with a felony, viz., transportation of one gallon of hootch, moonshine, corn whisky. Upon trial on that information Mrs. Brown was acquitted and this defendant was found guilty and the jury assessed his punishment at two years' imprisonment in the penitentiary. He filed a motion for new trial which the court sustained. Thereafter the prosecuting attorney, by leave of court, filed an amended information charging that at the time and place named in the original information this defendant unlawfully had in his possession one gallon

of hootch, moonshine, corn whisky. Defendant was again tried upon the latter information, resulting in the conviction from which this appeal was taken. Defendant has filed no brief in this court. The question presented by his motion for new trial which chiefly requires notice is the admissibility of certain evidence introduced by the State. The point is also made that defendant's demurrer to the evidence should have been sustained.

The State's evidence disclosed the following: About eight or nine o'clock on the evening of May 5, 1931, Sheriff Marcell Hendrix and two deputies,Wiley Mashburn and R. E. Hodge, were driving south in a Model A Ford sedan in a street in Springfield, Missouri, in response to a previous call. In passing the home of Mr. and Mrs. Ed .Belongey, parents of defendant's wife, they noticed defendant sitting in a car, a Chevrolet coupe, referred to in the evidence as defendant's car, parked in front of the Belongey home. As the officers drove slowly by they saw defendant's wife on the porch, an outside light being turned on. She was carrying something in a paper bag under her arm. Watching, they saw her go to the car in which defendant sat, hand the paper bag with its content into the car and get in, seating herself behind the steering wheel. They turned and followed the Chevrolet which had driven rapidly away. The officers drove as fast as they could but the Chevrolet drew somewhat away from them. After a chase of five minutes or so defendant's car turned into Kennedy Street, an unpaved and unlighted street. Following, the officers saw the Chevrolet which had stopped ten or twelve feet from a certain telephone pole. Defendant, who had got out of the car before the officers turned into the street, was just getting back into the car. Defendant's car started again and the officers continued the pursuit. As they passed the telephone pole they observed the paper bag sitting by the pole. They overtook defendant and his wife about two blocks from that point, stopped them and placed them under arrest. Nothing was found in defendant's car. Sending Mashburn with the prisoners to the police station Hendrix and Hodge hastened back to the place where they had observed the paper bag by the telephone pole. Finding it still there they took charge of it. It was found to contain a gallon jug full of liquor which proved to be corn whisky. The paper bag was identified at the trial by the testimony of Hodge and Hendrix as the same one they had seen defendant's wife carry from the porch of the Belongey home and hand into the Chevrolet car. Defendant offered no evidence.

At the first trial, under the original information, Sheriff Hendrix and Deputy Sheriffs Mashburn and Hodge had testified for the State. When the subsequent trial under the amended information was held

Hendrix and Mashburn were dead. The State offered in evidence their testimony given at the first trial. Defendant objected on the ground that the case in which the testimony had been given was a different case from the one then on trial, defendant having been on trial for a felony when the testimony was given while the instant trial was on a misdemeanor charge, and that to admit said evidence would deny defendant his constitutional right to meet the witnesses against him face to face. The court overruled the objection and admitted the evidence. That ruling presents the most serious question involved in this appeal.

■ I. As above stated, the defendant has not favored us with a brief. The Attorney-General cites four cases in support of his contention that defendant's constitutional right was not violated, viz. State v. McO'Blenis, 24 Mo. 402; State v. Moore, 156 Mo. 204, 56 S. W. 883; State v. Barnes, 274 Mo. 625, 204 S. W. 267; State v. Harp, 320 Mo. 1, 6 S. W. (2d) 562. None of those cases deal with the exact question here presented. The McO'Blenis case decided that the testimony of a witness taken and preserved at a preliminary hearing may be given in evidence upon a subsequent trial of the defendant on the charge on which the preliminary hearing was held, the witness being shown to be dead at the time of the trial. That case and the Moore case which approved and followed it were homicide cases. The McO'Blenis case has been consistently adhered to by this court and may be considered the settled law of the State on similar facts. It is in line with the general trend of authority where the witness is dead when his testimony previously given is offered. It was followed and applied in State v. Barnes, supra, which was a prosecution for burglary and larceny in which the testimony of a witness, dead at the time of trial, had been taken by a stenographer at the preliminary hearing and was read from the stenographer's notes at the trial. In State v. Harp, supra, the principle of the McO'Blenis case and cases following it was extended to admit, on a second trial under the same information, the testimony of a witness given on the first trial and which had been preserved in a bill of exceptions, the witness, though living, being a nonresident of the State and his whereabouts, after diligent search and inquiry, being undiscoverable at the time of the second trial. Under the foregoing authorities there can be no doubt of the admissibility of the testimony in question unless, as seems to have been defendant's contention at the trial, it is rendered inadmissible because of lack of identity of the charge on which defendant was first tried and at which the testimony was given with that on which the second trial was had and the testimony of the deceased witness was offered.

560

█ In State v. Wilson, 24 Kan. 189, the defendant had assaulted one Ball. He was arrested and given a preliminary hearing on a charge of assault with intent to kill Ball and at that hearing Ball's testimony was taken. Ball died and the defendant was then charged with his murder. Ball's testimony given at the preliminary hearing on the assault charge was introduced at the trial on the murder charge. Concerning the competency of that testimony the court, through .BREWER, J., said:

"Of the general doctrine concerning the competency of the testimony of a deceased witness given in a former action between the same parties, counsel make no question, but they suggest three things which, as they claim, remove this from the operation of the general rule. The charge was not the same; the defendant was not present; and there was no trial, but only a preliminary examination. But we do not think that these matters affect the question. Greenleaf, in his work on Evidence (13 Ed., vol. 1, sec. 163), thus states the rule, and the reason of it: 'The chief reasons for the exclusion of hearsay evidence, are, the want of the sanction of an oath, and of any opportunity to cross-examine the witness. But where the testimony was given under oath, in a judicial proceeding in which the adverse litigant was a party, and where he had the power to cross-examine and was legally called upon so to do, the great and ordinary test of truth being no longer wanting, the testimony so given is admitted, after the decease of the witness, in any subsequent suit between the same parties.' And again, in the succeeding section the author adds: 'The admissibility of this evidence seems to *turn* rather *on the right to cross-examine,* than upon the precise nominal identity of all the parties.' The two essentials, the oath and the right to cross-examine, existed in this case. There was a judicial proceeding to which the defendant was a party. The testimony was given under oath. The defendant had a right to be present, was in fact represented by counsel, and could have cross-examined fully and without limit or restraint. The act, the subject of inquiry, was the same; and while the charge is different, the difference results from matters occurring after the giving of the testimony, and in no manner changing the actual facts of inquiry." [24 Kan. l. c. 194.]

After further citation of authorities the court said: "Both reason and authority unite.to support the competency of this testimony." In like circumstances testimony so taken at preliminary hearings on charges of felonious assault was held competent on the trials of the defendants for murder of the persons assaulted in Dunlap v. State, 9 Tex. App. 179, and Hart v. State, 15 Tex. App. 202.

The principle applied in State v. Wilson, supra, was recognized in several early English cases. In Rex v. Smith, 2 Starkie, 208

(1816), the defendant was charged before an examining magistrate with assault and robbery, and the testimony of the assaulted person was taken, the defendant having opportunity to cross-examine. That person died and the defendant was charged with his murder. On the trial said testimony taken before the magistrate was admitted. It was held competent. Similarly, in a case reported in 6 Cox, Crim. Cas. 425 (1854), one Beeston had struck A with a hammer and was charged before an examining magistrate with assault with intent to do great bodily harm. A's testimony was taken, Beeston being present and having opportunity to cross-examine. A died from the blow and Beeston was prosecuted for his murder. Upon the murder trial A's testimony given before the magistrate was offered and was objected to on the ground that the charge was not the same as that on which the testimony had been given. It was admitted and its admission was held proper both under the common-law and the then English statute.

In the case reported in 12 Cox, Crim. Cas. 101 (1871), the defendant was on trial under an indictment charging the uttering of a forged promissory note. The testimony of a witness, unable to attend, which had been taken before a committing magistrate on a charge of false pretenses was admitted over the objections of defendant that the charges were not the same. The court said: "It was proved, however, that the two charges were substantially the same, arising out of the same transaction, and the same evidence proving both, and that the prisoner had the opportunity of cross-examination before the magistrate;" and held the evidence admissible.

In Cox v. State, 28 Tex. App. 92, 12 S. W. 493, the defendant was indicted in one count for the theft of a horse charged to belong to Sparlin. A trial was had in which one Maloney testified to certain facts which, however, did not relate to the ownership of the horse. For some reason there was another trial, on a new indictment in four counts, for the same theft, the first charging ownership of the horse in Sparlin, the second in Wolf, the third in Smith and the fourth in some person unknown. Maloney had died prior to the second trial and his testimony given at the first trial was introduced. After the evidence was all in the State dismissed the first three counts of the indictment leaving the case standing on the count alleging ownership in a person unknown. The Court of Appeals denied the defendant's insistence that the dismissal of the first count and proceeding on the fourth was such change of the case as to render it a different case and make illegal and inadmissible the testimony of Maloney given at the first trial. The court said:

"It will be further noted that the deceased witness testified nothing

as to ownership and knew nothing about it. The facts testified by him unquestionably related to the same transaction, to the same defendant, and to the same animal as were involved in the former trial and were pertinent to the one case as to the other. Moreover, the right to be confronted by the witness, as to his testimony, and the right of cross-examination, had been fully accorded to, and exercised by, the defendant at the former trial.''

In Fox v. State (Ark.), 144 S. W. 516, a Mrs. Winkleman had been robbed and murdered. The defendant was indicted for the crime of being accessory before the fact to robbery. On the trial the State was permitted to introduce the testimony given by one Izgregg, a witness who had testified at a former trial of the same defendant on the charge of being accessory before the fact to the *murder* of Mrs. Winkleman. It was shown that the witness had died. It was contended by the defendant that the testimony was not competent because taken under a different indictment and in a different case. The court, denying the contention, said that the robbery and murder were parts of the same transaction and committed by the same persons at the same time for the same purpose; that the identity of issues was complete, and, the witness being dead, there appeared no well-founded reason why the testimony taken on the first trial should not be read on the second trial. The court added:

''The general rule in such cases is that it is not necessary in order to admit the testimony that it should have been given on the trial of a case in the exact technical shape of the second action, or that the parties should be identically and nominally the same with those on trial of the first action. The true test in regard to the admissibility of such evidence where the issues are substantially the same is, Did the party who is to be affected by it have the power to cross-examine the witness and the opportunity to do so? The issues in two cases were substantially the same and the parties were the same. As far as the testimony given by Izgregg is concerned, it may be said that it related to the same issue in both cases, and was competent for the same purpose in both cases. The parties in both cases were the same, and the testimony was admitted for the same purpose, and to establish the same issue in both cases. Both indictments arose from the same facts, and the defendant, as we have seen, had the opportunity to cross-examine the witness on the first trial.'' [144 S. W. l. c. 517, citing authorities.]

Contra, on somewhat similar facts the Mississippi Supreme Court reached a different conclusion in Dukes v. State, 80 Miss. 353. There the defendant had robbed one Welch and in effecting the robbery and as part of the means used to accomplish it had struck Welch a blow from which he later died. Before Welch's death the defend-

ant was given a preliminary hearing on a charge of robbery before a committing magistrate, at which Welch testified, the defendant being present with counsel and having opportunity to cross-examine. Welch dying, the defendant was charged with his murder and the testimony of Welch given at the hearing on the robbery charge was admitted. The Supreme Court held it was incompetent. The court referred to the Beeston case, supra, stating that there the issue was substantially the same in both hearings but that it was not so in the case before the court; that it must be obvious that many questions might appropriately be asked on the charge of robbery which would not necessarily or perhaps ordinarily be asked on the charge of murder. The court further said:

"It must be perfectly clear that the issue—the offense charged—is substantially the same, so that the questions asked to make out the one offense would be the same as those asked to make out the other, else the rule is not satisfied, and the testimony is incompetent."

From the foregoing and other cases examined the rule may be deduced that in order to render admissible against the defendant testimony of a witness taken at a former trial or hearing, the witness having since died, there need not be precise technical identity of the charge on which the first hearing was had and the testimony given with that on which the later trial is held and the testimony of the deceased witness is offered, but there must be substantial identity of the issues involved; and of course the defendant must have been afforded opportunity for full cross-examination of the witness.

We think the facts of the instant case bring it within the rule making admissible the testimony of the deceased witnesses given at the first trial. It is true the offense charged in the second trial was not the same as that on which defendant was first tried. True also, we have held that possession of hootch, moonshine or corn whisky is not a lower degree of the crime of transporting such liquor or one *necessarily* included in the graver charge so that a defendant charged with felonious *transportation* may under that charge be convicted of unlawful *possession* of the same liquor. [State v. Hancock, 320 Mo. 327, 7 S. W. (2d) 273.] But see also State v. Hall, 312 Mo. 425, 443, 279 S. W. 102, in which it was held that possession is included in a charge of transportation at least to the extent of making permissible the amendment of an information charging transportation so as to charge possession. Moreover, if it can be conceived that one may transport liquor without being at the time in possession of it, such is not this case. The legal ownership of the liquor is not an essential fact in establishing either offense. In this case both prosecutions related to and were based upon the

same transaction and the same facts. At this trial, with the exception of the court reporter who was called solely to identify and read his notes of the two deceased witnesses' testimony, the State offered the testimony of but three witnesses, viz., the officers who had pursued and captured defendant. The testimony all related solely to the facts and circumstances beginning with the discovery by the officers of the defendant seated in his car in front of the Belongey home and ending with his capture and the seizure of the gallon jug of liquor. The testimony of witness Hodge at this trial corresponded in every material fact and detail with that of the deceased witnesses given at the first trial and read in evidence at the second. The same liquor and the same acts of defendant were involved in both trials. There was no evidence tending to show possession by defendant of any other liquor nor possession of this particular liquor other than that involved in the transportation thereof with which he was first charged. It is clear, therefore, that the State based its charge of possession and relied for conviction thereof upon identically the same transaction, facts and circumstances as those forming the basis of and relied upon to sustain the charge of transportation. Upon those facts the State first charged defendant with transportation. By the amended information it charged him, for the same acts, with possession only. All of the facts and circumstances testified to by the deceased witnesses were equally pertinent to both charges. Defendant was confronted with the witnesses on the first trial and had opportunity to cross-examine them fully, a right which he exercised. In these circumstances we think there was no error in admitting the testimony of the deceased witnesses. No objection was made to its competency except that above discussed.

II. Defendant's demurrer to the evidence was properly overruled. While the liquor in question was in defendant's car there were but two persons, defendant and his wife, in the car. Indubitably one or both had possession of and dominion over it. If defendant himself or he and his wife jointly had such possession he is guilty. If she was violating the law in his presence and with his connivance and assistance he is guilty. An accessory to a crime may be charged and convicted as a principal.

If it is urged that possession of hootch, moonshine or corn whisky is not a criminal offense and the demurrer should have been sustained on that ground, the contention cannot be allowed. In State v. Carter, 16 S. W. (2d) 648, the Kansas City Court of Appeals sustained a conviction of misdemeanor where the charge and the proof were possession of moonshine whisky. This court has assumed, without discussion, that possession of such liquor is a mis-

demeanor. [See State v. Hancock, supra; State v. McBride, 327 Mo. 184, 37 S. W. (2d) 423.] By Section 4481, Revised Statutes 1929 (Sec. 6588, R. S. 1919, amended Laws 1921, p. 413), it is declared unlawful to manufacture, sell, *possess*, give away or transport *intoxicating liquors*, within the State, etc., (with certain exceptions not here applicable. (Italics ours.) The punishment fixed by Section 4524, Revised Statutes 1929, makes such possession a misdemeanor. In 1923, Laws 1923, page 236, now Section 4500, Revised Statutes 1929, the manufacture, sale, giving away and transportation of "hootch," "moonshine," "corn whisky," were made felonies. That act took out of the operation of the earlier statute, present Section 4481, the things specified therein which became the subject of the legislation in the later act, present Section 4500, but did not repeal the earlier act as to things therein contained with which the later act is not in conflict. Obviously, so far as *possession* of intoxicating liquor is concerned, there is no conflict between the two legislative acts because the later act does not deal with possession. The observation in State v. Pinto, 312 Mo. 99, 109, 279 S. W. 144, that: "The misdemeanor statute covers all kinds of liquors except those specifically described and provided for in the Act of 1923," must be read and understood in the light of the facts and issues there under consideration. In that case the defendant was charged with the *manufacture* of corn whisky which is specifically made a felony by the Act of 1923, and the court when it used the above quoted language was defining the term "corn whisky" as used in the 1923 Act, having in mind said felony statute. But the court did not mean to hold that the earlier statute no longer covered or applied to *possession* of the kinds of intoxicating liquor the *manufacture, sale, giving away and transportation* of which were made felonies by the later act and which violations alone were dealt with by the Legislature in said later act. The question of possession was not at issue nor involved in the Pinto case.

There are some procedural matters complained of in defendant's motion for new trial which we deem unnecessary to discuss. We have examined them and find the complaints without substantial merit. The information, verdict and judgment are in due form and sufficient. Finding no prejudicial error in the record it follows that the judgment of the circuit court should be and it is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.