The State v. Edgar McCowan, Appellant.—56 S. W. (2d) 410.

Division Two, December 31, 1932.

*F. M. Ross* and *F. F. Wesner* for appellant.

*Stratton Shartel,* Attorney-General, for respondent; *James K. Coolidge* of counsel.

1216

COOLEY, C.—Defendant McCowan and Ross McClain were jointly charged by information in the Circuit Court of Pettis County with unlawful possession of intoxicating liquor. The case was dismissed as to McClain. Upon trial to a jury McCowan was found guilty and his punishment was assessed at four months' imprisonment in jail and a fine of $600. From sentence and judgment upon the verdict he appealed. The presence in the record of certain constitutional questions gives this court jurisdiction of the appeal.

The State's evidence tended to show that on the night of October 14, 1931, the date charged in the information, T. O. Herrick, sheriff of Pettis County, with two deputies, searched defendant's premises pursuant to a search warrant and found there two gallon jugs and two quart bottles of intoxicating liquor which defendant admitted belonged to him and which were in his possession. The State used the three officers as its witnesses. All testified that said liquor so found in defendant's possession was intoxicating liquor. One said it was whisky, "what I would call Whisky." Another testified it was intoxicating liquor, "I would say corn whisky." The third described it simply as "intoxicating liquor." Defendant offered no evidence.

If defendant's motion to quash the search warrant and suppress the evidence obtained thereunder was properly overruled the evidence amply sustains the verdict of guilty.

I. Defendant, by a timely motion to quash, challenged the information on the grounds that it charges no offense, does not charge defendant with any unlawful act, and is "too indefinite, uncertain and insufficient in form, substance and language" to charge any offense.

The charging part of the information is that at the time and place named therein said Ross McClain and Edgar McCowan "unlawfully did have in their possession a quantity of intoxicating liquor." The specific complaint of the information, as we understand defendant's brief, is that it does not specify the kind of liquor defendant is accused of having possessed.

The statute, Section 4481, Revised Statute 1929, denounces as unlawful the possession of *any kind or quantity* of intoxicating liquor, except in the private residence of the owner when it has been lawfully acquired and is being lawfully used. [See State v. Brown, 331 Mo. 556, 56 S. W. (2d) 405.] It is not necessary that the information negative the existence of the exceptions set forth in the statute or that it allege that the defendant possessed the intoxicating liquor for beverage purposes or that it contained more than one-half of one per cent of alcohol. [State v. Sillyman (Mo.), 7 S. W. (2d) 256.]

In State v. Stewart, 216 Mo. App. 644, 271 S. W. 875, the court had under review an information charging the defendant with having possessed "a certain quantity of intoxicating liquor, to-wit, about one gallon of intoxicating liquor." The contention was made that the information was insufficient because it did not specify the kind or character of liquor. In a well reasoned opinion the court held the information good, citing cases from a number of other jurisdictions in support of its ruling and reviewing several decisions of this court based on the illegal sale of intoxicating liquor wherein it was held unnecessary to allege the kind of liquor sold.

In State v. Wingfield, 115 Mo. 428, 439, 22 S. W. 363, it was said that while there had been some confusion in the appellate courts of the State, "the law is now quite well settled that in an indictment for the unlawful sale of liquor it is sufficient to charge a sale simply without stating to whom sold, or that such person was to the grand jurors unknown." Citing cases. If it is unnecessary in charging the unlawful sale of liquor to specify the kind of liquor or the person to whom sold no good reason can be seen why in charging unlawful possession, it should be necessary to specify the kind of intoxicating liquor possessed when possession of any kind of such liquor (except as specified in the statute) is forbidden.

An information charging that the defendant "did unlawfully possess intoxicating liquor," without specifying the kind, was held sufficient in State v. Stanley, 217 Mo. App. 26, 273 S. W. 139.

In State v. Sillyman, supra, the information is not set out in the opinion but we find by consulting the files of the case in this court that it charged that the defendants "did unlawfully have in their possession for beverage purposes certain intoxicating liquor containing more than one-half of one per cent of alcohol," without naming the kind of liquor. It was held sufficient.

So also in State v. Griffith, 311 Mo. 630, 279 S. W. 135, the fifth count of the information is not copied but from the files we find it charged that the defendants "did willfully and unlawfully have in their possession intoxicating liquor," without specifying the kind of liquor. It was held sufficient and the defendant's conviction thereunder was affirmed.

Defendant cites and relies upon State v. Miller, 329 Mo. 179, 44 S. W. (2d) 15, by this court, and State v. Boggs, 49 S. W. (2d) 269, by the Kansas City Court of Appeals, which he claims in principle sustain his contention that the information here is insufficient. We think they do not. In neither was the sufficiency of the information the question decided. In the Miller case we held that "corn whisky," the sale of which is denounced as a felony by Section 4500, Revised Statutes 1929, is a different commodity from lawfully manufactured whisky, the illegal sale of which is a misdemeanor, and that under an information charging the sale of corn whisky the defendant could not be convicted of the sale of "whisky" because the latter offense was not included in the charge of selling "corn whisky" under said Section 4500.

In the Boggs case the defendant was charged with possession of intoxicating liquor, to-wit, "one quart of moonshine whisky." The proof showed possession of "corn whisky." There was no discussion of the sufficiency of the indictment. The court held that there was a fatal variance between the charge and the proof; that "corn whisky" and "moonshine whisky" are different things and that proof of possession of corn whisky did not sustain a charge of possession of moonshine whisky; citing State v. Kroeger, 321 Mo. l. c. 1068, 13 S. W. (2d) 1067. That case is not in point so far as concerns the challenge to the information herein. But we feel impelled to add that in our opinion the learned Court of Appeals misconceived the decisions of this court in the Kroeger case and in State v. Pinto, 312 Mo. 99, 279 S. W. 144. In the Kroeger case the defendant was charged with selling corn whisky under the felony statute and the proof showed only a sale of whisky, a misdemeanor. The court was concerned primarily in determining whether the sale of whisky, lawfully manufactured, comes within the inhibition of Section 4500 and held that it does not. The

court did say, however (321 Mo. l. c. 1068), that "hootch," "moonshine" and "corn whisky" are not synonymous term. But on page 1067, same report, the court also said "it would seem that, if the proof was that the whisky sold was in fact unlawfully manufactured, such proof would sustain the charge of selling 'moonshine,' because all unlawfully manufactured whisky is 'moonshine;' " citing the Pinto case and State v. Griffith, supra. In the Pinto case this court said:

"As a matter of common knowledge, moonshine is a name applied to other liquors than corn whisky. It is a broader term, and includes the corn whisky denounced by the statute. The same may be said of 'hootch.' . . . All illegal corn whisky is moonshine, but all moonshine is not corn whisky."

We hold that the information in this case was sufficient.

■ II. Before the trial defendant filed a motion to quash the search warrant pursuant to which his premises had been searched and to suppress the evidence thus obtained, alleging that his rights under sections 11 and 23, Article II of the State Constitution had been violated. The grounds alleged in the motion may be summarized thus: That the justice of the peace who issued the warrant did so without knowledge of probable cause and without "examination into the question of probable cause;" that he heard no witnesses on that question; that he did not read the application for the warrant before issuing the warrant; that he issued the warrant prematurely and without having first determined that there was probable cause and before "any proper application therefor" had been delivered to him; that he issued it at his home after his regular office hours; that he issued it without having the sheriff who applied for it swear to the application; and (as a conclusion) that the justice "wholly failed to act judicially in the purported issuance of said search warrant;" for which reasons it was null and void and the search thereunder was illegal.

The court heard evidence introduced by defendant in support of his motion, as follows: Defendant was called and testified to the search of his premises. The search warrant was introduced. We quote a part:

"The State of Missouri to the sheriff of Pettis County (or any constable) Greeting: Whereas T. O. Herrick, the duly elected, commissioned and acting sheriff of Pettis County in the State of Missouri, on the 14th day of October, 1931, filed before me the undersigned, a justice of the peace within and for Sedalia Township in said county, his duly verified application and petition in writing, as provided by law, stating therein that in the buildings and structures, and upon the premises and place hereinbelow given, to-wit: (here follows description of premises) intoxicating liquor is now being unlawfully manufactured, sold, stored and kept; that there is also being used and kept a still, doubler, worm, worm tub, mash, mash tub,

fermenting tubs, vessels, fixtures and equipment, and parts thereof, used and fit for use in the unlawful manufacture and production of intoxicating liquor, and

"Be it known that from the facts set forth in said verified petition the evidence adduced and the showing thereby and thereupon made it is found by me that there is probable cause to believe that the laws of the State of Missouri in relation to the prohibition of intoxicating liquor, as set forth in the statutes in such cases made and provided, are being violated at and in the buildings, structures, and upon the premises described in said petition, and in the manner therein charged.

"You are therefore commanded," etc. It is signed "W. H. Leslie, Justice of the Peace."

Mr. Leslie, called by defendant, testified in substance: That he was and had been for eight or nine years a justice of the peace; that on the night of October 14, 1931, about eight or nine o'clock, the sheriff, Mr. Herrick, and his deputy Aulgar, came to his house and presented to him "some papers" (evidently the search warrant ready for his signature and the petition therefor); that he didn't read the "application" thoroughly but looked it over; "well, I looked them both over, I just didn't go into details on the whole thing." "Q. You didn't read either one, did you? A. Yes, I looked over the first one and glanced over the other and seen what it was." (It is not shown which paper he meant by "the first one" or by "the other.") He testified further that he did not ask "who it was for, I looked it over;" that he "seen what it was for." "Q. Now, did you receive any evidence, take any evidence, swear anybody and have anybody testify with reference to this application? A. Just Herrick. Q. What did you do with reference to swearing him? A. I asked him if he would swear to this; he said 'yes' and signed them. Q. Was that all that was done? A. That was all there was to do. Q. And that is all you did? A. Yes." He said further that he asked no questions about the application; that he maintained an office which he generally closed about five or five-thirty P. M., and on the date in question had closed it and gone home before the officers arrived. The foregoing was all the evidence on the motion. The application or petition for the search warrant was not introduced.

The court overruled the motion to quash the search warrant and suppress the evidence. At the trial and in his motion for new trial defendant duly and sufficiently preserved his objections and exceptions to the court's ruling on the motion and to the evidence obtained by the search.

On this point defendant relies chiefly upon State v. Hobbs, 218 Mo. App. 448, 279 S. W. 200. In that case it clearly appeared from the evidence that the petition for the search warrant, upon which alone the warrant was issued, was not sworn to by the petitioning

officer, the prosecuting attorney, at or before the time the warrant was issued, nor indeed at all. The petition purported to be *signed* by the prosecuting attorney but that officer did not appear before the justice. The justice did not at the time attach his jurat to the petition but issued the warrant. A few days later and *after the warrant had been executed and returned* by the officer to whom it had been directed, the justice noticed that he had failed to affix his jurat and thereupon he did affix it, antedating it as of the date the paper had been left with him and the warrant issued. Even then the prosecuting attorney did not swear to the petition. There was no evidence other than that unverified petition of the prosecuting attorney upon which to base a finding of probable cause for the issuance of the search warrant. It was held that the record of the petition for and the issuance of the warrant, not being one the justice was required by law to keep, could be assailed collaterally and that upon the conceded facts the issuance of the warrant was unauthorized and the search thereunder was unlawful.

In the instant case we have a very different state of facts. From the evidence, the substance of which we have set out, we think it clear that the sheriff did swear to the petition when he filed it with the justice and before the warrant was issued. The justice testified that the sheriff signed it and that upon being asked if he would swear to it said he would. Defendant argues that the sheriff said he *would* swear to it—perchance at some future time—but did not then do so. We cannot yield assent to this ingenious suggestion. Regardless of the form of language used it cannot reasonably be doubted that both the sheriff and the justice meant and understood that the former was swearing to the petition then and there. It does not definitely appear whether or not the justice at that time affixed his jurat. It can be gathered from the testimony that the jurat appeared duly affixed on the petition when the hearing on defendant's motion was had. The warrant, a portion of which we have quoted and which was introduced by defendant, recited that a duly verified petition had been filed with the justice. Defendant was attempting to impeach that recital and the warrant. Under the circumstances we think he should be held to have the burden of proof on that issue. If the jurat was not attached at all we may safely assume that defendant would have introduced the petition, thus proving the fact. If it appeared as of the date the paper was filed but in fact was not attached until later doubtless defendant would have asked the justice, whom he had called as his witness, about it. We conclude therefore that the evidence amply justifies the finding that the petition was duly verified by the sheriff and filed with the justice before the search warrant was issued.

■ A sheriff is a prohibition enforcement officer within the meaning of the statute, Section 4511, R. S. 1929, and authorized to make

application for search warrants. [State v. Stevens, 316 Mo. 602, 292 S. W. 36.] ■ Probable cause for the issuance of the warrant may be found from the verified petition of the enforcement officer, if sufficient facts are stated, without other evidence. [Sec. 4511, supra; State v. Naething, 318 Mo. 536, 300 S. W. 829; State v. Halbrook, 311 Mo. 664, 279 S. W. 395; State v. Stevens, supra.] See the latter case also for discussion of the sufficiency of the statement of facts. It is not contended here that the facts were not sufficiently stated in the petition.

It is argued also that the justice did not sufficiently familiarize himself with the contents of the application to be able to act judicially in the matter. He may not have read carefully every line of it. No doubt it was on a printed form with which he was already familiar. His testimony shows that he "looked it over" sufficiently to know what it was and to act upon it understandingly. We cannot undertake to lay down a precise rule as to how much time and care must be given by the magistrate in examining an application for a search warrant before he may act upon it.

The contention that the warrant was invalid because issued by the justice at his home instead of at his office is mentioned, rather casually, but not stressed in defendant's brief. No authorities are cited in support of it.

■ In determining the question of probable cause for the issuance of a search warrant the justice or other officer issuing the warrant acts judicially. But, as pointed out above, it was held in State v. Hobbs, supra, that such judicial action is not one of which the law requires a record to be kept. ■ By statute, Section 4511, supra, the application may be filed with and the warrant issued by the judge of a court having criminal jurisdiction in vacation, and if it appears to such judge "or justice of the peace before whom said petition shall be filed," either from the facts set forth in said petition or from evidence heard thereon that probable cause exists, it is made the duty of "such officer before . . . whom said petition was filed" to issue the warrant. In the case of a judge acting in vacation of court clearly *court* action is not required. Nor do we think that a justice of the peace is limited to acting in such matter only at his office or courtroom, particularly at times when such office or courtroom would not ordinarily be open for official business. We think the motion to quash the search warrant and to suppress the evidence was properly overruled.

III. Complaint is made of Instruction B on the ground that in view of defendant's motion to quash the search warrant the State was not entitled to have the case submitted, and further that the instruction was too general, indefinite and uncertain, did not declare the

law under the evidence, and permitted the jury to "roam at will" through the evidence without a definite issue of fact being presented. The instruction authorized conviction if the jury found beyond a reasonable doubt that at Pettis County, Missouri, on or about October 14, 1931, the defendant "unlawfully did have in his possession a quantity of intoxicating liquor."

Similar complaint is made of the verdict, viz., that it is indefinite, too general and uncertain and does not declare of what offense defendant was guilty. The verdict was: "We, the jury, find the defendant guilty as charged in the information and assess his punishment at 4 months in jail and a fine of six hundred dollars."

█ Defendant's motion for new trial is itself somewhat vague and uncertain as to these points. From his brief we gather his complaint is that the instruction did not require the jury to find and that the jury did not find and declare in the verdict the kind of liquor defendant had possessed. He cites State v. Frazier (Mo. App.), 269 S. W. 410; State v. Frazier (Mo. App.), 40 S. W. (2d) 761, and State v. Boggs, supra. The latter case we have already noticed. In State v. Frazier, 269 S. W. 410, the defendant was charged with possession of several contraband articles. There was no evidence that he possessed some of them. The evidence was conflicting and uncertain as to some others. The instruction given authorized the jury to find the defendant guilty if they found that he possessed all or any of the articles named and did not require them to specify which they found him guilty of possessing. In the second Frazier case the information is similar to that in the first. The evidence is not set out. The court ruled similarly regarding an instruction and the verdict. Without taking space to analyze or discuss those cases it is enough to say that whatever may be thought of the correctness of the rulings therein, they do not help defendant here. In this case all the evidence related to the same liquor. It was charged in the information to be intoxicating liquor and the proof so showed. That one witness called it whisky while another characterized it as corn whisky can make no difference in the circumstances of this case because both witnesses were referring to the same liquor, and whether it was whisky or corn whisky it was intoxicating liquor as charged in the information. There was no possibility of misunderstanding by the jurors or confusion among them as to the liquor referred to in the instruction, and whether they thought it was whisky or corn whisky could not matter because in either event it was the liquor charged in the information and submitted by the instruction.

We find no reversible error in the record. The judgment of the circuit court is accordingly affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All of the judges concur.