STATE of Missouri, Respondent,

v.

Mitchell ZAMMAR, Appellant.

No. 45753.

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1957.

Motion for Rehearing or to Transfer
to Court En Banc Denied
Oct. 14, 1957.

Blackford, Imes, Compton & Brown, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Grover C. Huston, Asst. Atty. Gen., for respondent.

LEEDY, Judge.

Mitchell Zammar (hereinafter referred to as defendant) was convicted of burglary in the second degree and "larceny committed in conjunction with [said] burglary," and sentenced to imprisonment in the penitentiary for a term of two years for each offense, or a total of four years, and he appeals. The live questions in the case are these: (1) Whether the indictment is good, and (2) whether the evidence in the case (all of which was introduced by the prosecution) is sufficient to support the verdict.

The indictment describes the premises alleged to have been burglarized as "the A. and N. Hardware Store, the property of Lloyd Norris and Vivion Anderson, the same being a building in which divers goods, wares, merchandise * * * were then and there kept and deposited," etc. Defendant's first contention is that the failure to allege "whether the A. & N. Hardware Store was a corporation, or a partnership, or a trade name" renders the indictment insufficient, citing State v. Jones, 168 Mo. 398, 68 S.W. 566; State v. Jordan, Mo., 289 S.W. 540; State v. Evans (State v. Barri), Mo., 217 S.W. 30.

These cases, which undeniably support defendant's contention, represent former holdings on the question—a view long since abandoned. A directly opposite position has been taken, so that it is no longer required that the legal status of the alleged owner of the burglarized structure (as being a corporation, a partnership or an individual) be averred. State v. Carson, 323 Mo. 46, 18 S.W.2d 457; State v. Stewart, 329 Mo. 265, 44 S.W.2d 100; State v. Latham, 344 Mo. 74, 124 S.W.2d 1089; State v. Quinn, 345 Mo. 855, 136 S.W.2d 985; State v. Dowling, 360 Mo. 746, 230 S.W.2d 691; State v. Stubblefield, Mo., 248 S.W.2d 665. The latest pronouncement on the subject is the last-mentioned case, where the single question was as to the sufficiency of the burglary charge contained in an information for burglary and larceny, which portion omitted to aver the legal status of the alleged owner of the building, "the W. L. Jones Motor Company." In denying the contention made in the instant case, and upholding the validity of the charge, the court quoted approvingly from State v. Hedgpeth, 311 Mo. 452, 457, 278 S.W. 740, 741, as follows: "Proof of the appellant's guilt of the crimes charged,

or either of them, did not depend upon establishing the fact of the oil company's incorporation, but upon the question as to whether the appellant feloniously broke into the premises of another, and, to establish the larceny, that he stole from such premises the property described in the charge. While the corporate existence of the oil company was alleged in the information, it was a mere matter of description to enable the owner to be more readily identified. Whether, therefore, the owner of the premises be a corporation, a partnership, or an individual is not material to the appellant's defense or in the establishment of his guilt."

 Defendant next complains that "the bare charge of 'break and enter' in the indictment did not sufficiently enlighten the defendant as to the charge he had to meet," in that he "could not tell whether the window was broken, a latch lifted, or what was supposed to have happened." The indictment, after averring the date and venue of the offense, charges that defendant "did then and there willfully and feloniously and burglariously break and enter * * * [the structure hereinabove described] in which divers goods, wares, merchandise, other valuable things and personal property were then and there kept and deposited with the felonious intent the goods, wares, merchandise and other valuable things and personal property in the said building then and there being, then and there feloniously and burglariously to steal, take and carry away, and one H & R Model 48 20-gauge shotgun, one Winchester 218 BEE, Model 43, 29135A, one Stevens Model 15A, 22 Cal. rifle, one Winchester Model 12, 20-gauge shotgun, Serial 1395483, one Savage Model 24, Over and Under 22 and 410, one Stevens 20-gauge shotgun, Model 94C the personal property of Lloyd Norris and Vivion Anderson, then and there in said hardware store building being found, and then and there feloniously and burglariously [did] steal, take and carry away with the intent to deprive the rightful owners the use

thereof and convert to his own use, against the peace and dignity of the State." The indictment having charged the elements of the offense of burglary in the second degree under § 560.070 (all statutory references are to RSMo 1949 and V.A.M.S. unless otherwise expressly noted), namely, breaking and entering, the character and situation of the building, and the intent, it was sufficient in that regard. It is only in first degree burglary that the method of gaining entry by forcibly bursting or breaking is important. State v. O'Brien, Mo., 249 S.W.2d 433.

The remaining objections to the sufficiency of the indictment go to the larceny or stealing aspect of the charge. In 1955 the Legislature, by Senate Bill 27, repealed 59 separate sections of the statutes relating to offenses against property, and enacted in lieu thereof five new sections (now known as § 560.156 and § 560.161) relating to the same subject, and thereby consolidated, combined or merged larceny, embezzlement, obtaining money or property by false pretenses and other kindred offenses into one crime, denominated "stealing." Paragraphs (1) and (2) of subsection 1 of § 560.156 define the words "property" and "steal," as used in the act, as follows:

"(1) 'Property', everything of value whether real or personal, tangible or intangible, in possession or in action, and shall include but not be limited to the evidence of a debt actually executed but not delivered or issued as a valid instrument and all things defined as property in sections 556.070, 556.080 and 556.090, RSMo 1949:

"(2) 'Steal', to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property."

Subsection 2 of § 560.156 reads: "It shall be unlawful for any person to intentionally steal the property of another,

either without his consent or by means of deceit."

Two of the repealed sections were those the catchwords of which ascribe to said sections, respectively, definitions of "grand larceny," § 560.155, and "petit larceny," § 560.240. Referring to the former of these, it was said in State v. Jenkins, Mo., 213 S.W. 796, 797, that it [the section] "does not attempt to define the essentials of the offense. It classifies, first, personal property according to valuation, and, second, by specific designation, the felonious taking of which shall constitute grand larceny. Except to denounce the felonious taking of the property designated as 'grand larceny,' the statute leaves the elements of the offense to be defined in a charge as at common law. This offense, as thus defined, is the wrongful and fraudulent taking and carrying away by any person of the personal property of another, from any place, with a felonious intent to convert it to the taker's own use, without the consent of the owner. 4 Bl. Com. 239; Hawkins, P.C. c. 33. A later definition which does not differ from the foregoing, except to be more comprehensive, is that it is the felonious taking by trespass, and the carrying away of the goods of another, without the latter's consent, with the felonious intent to deprive the owner of his property, and to convert it to the taker's use. 17 R.C.L. p. 5, and cases." The section specifying the effect of a *larceny* when committed in the perpetration of a burglary was left unrepealed. This apparent oversight was corrected at the next session of the General Assembly by substituting the word "stealing" for the word "larceny" wherever the latter appeared in § 560.110. Laws 1957, p. —, Senate Bill 63, § 1.

This court has not as yet been called upon to construe the new consolidated statute, nor to decide questions of pleading arising under it. The limited ones raised in the instant case do not call for a full scale inquiry into its scope, meaning and effect. Defendant says the indictment is bad under the new statute for two reasons: First, that it fails to allege in the language of subsection 2 of § 560.156 that the alleged stealing (of another's property) was done "either without his consent or by means of deceit;" and, second, that it fails to negative the defense provided for in subsection 3 of § 560.156 to the effect that if the property stolen "is a chattel and the person charged with stealing the same proves by a preponderance of the evidence that no further transfer was made, and that, at the time of the appropriation he intended merely to use the chattel and promptly to return or discontinue his use of it, he has a defense to a prosecution under subsection 2."

█ Treating these objections in the inverse order of their statement, it is sufficient to say that the language of the statute last quoted is obviously not descriptive of the offense, but, on the contrary, goes to a matter of defense, and in this situation no negative averment is necessary. In State v. Brown, 306 Mo. 532, 535, 267 S.W. 864, 865, the following from Kelley's Criminal Law and Practice, 3d Ed. p. 149, § 193, was quoted with approval: " 'But where the exception or proviso is found in a separate and distinct clause or part of the statute, disconnected from that which describes the offense, no such negative averment is necessary in the indictment, and if the defendant is within the terms of the exception, he must show it in his defense'." And in the same connection the opinion cites the following from State v. O'Brien, 74 Mo. 549, 551, as being the true rule: "Whenever an exception is contained in the section defining an offense, and constitutes a part of the description of the offense sought to be charged, the indictment must negative the exception, otherwise no offense is charged. State v. Meek, 71 Mo. 355, loc. cit. 357; State v. Shiflett, 20 Mo. 415. But where, as is in the case at bar, the section which defines the offense contains a proviso exempting a class therein referred to, from the operation of the statute, it is unneces-

sary to negative the proviso, but the exemption therein contained must be insisted on by way of defense, by the party accused." See, also, State v. Smith, 332 Mo. 44, 56 S.W.2d 39; State v. McCowan, 331 Mo. 1214, 56 S.W.2d 410, and 42 C.J.S. Indictments and Informations § 140.

Statutes comparable to the new Missouri consolidated stealing statute have been enacted in a number of states. Arizona Code Ann. § 43–5501 (1939) [A.R.S. § 13–661]; California Penal Code, §§ 484, 490a, 952 (Deering 1949 [West's Ann.Pen. Code, §§ 484, 490a, 952]); Florida Statutes 1955, § 811.021, F.S.A.; Louisiana Code of Criminal Law and Procedure, art. 740–67 (Dart 1943) [LSA–R.S. 14:67]; Massachusetts Ann.Laws, c. 266, § 30, c. 277, § 39 (1932); Minnesota Statutes § 622.01 1953) [M.S.A. § 622.01]; Montana Revised Code Annotated, § 94–2701 (1947); New York Penal Code, McK. Consol.Laws, c. 40, §§ 1290, 1290–a; Washington Revised Code, § 9.54.010 (1951). See, also, Laws of Wisconsin 1953, Vol. 2, p. 671, § 343.20, and Wisconsin Law Review, Vol. 1954, pp. 253–276. Pleading under such statutes has been simplified in some of the states mentioned by force of provisions specifying what shall be sufficient to the validity of a charge. It is to be noted that the new Missouri act was not accompanied by any provision having specific reference to the matter of pleading. Florida Law Review, Vol. IX, p. 209, loc. cit. 210–211, asserts that where-as the purpose of these statutes is to simplify pleading, some states, notably New York, Washington and Minnesota (in the view of the writer of the note) refuse to concede that any pleading reform has been effected.

With reference to the purpose of the new Florida statute, the Supreme Court of that state approved the following view of the trial judge in the case of Thomason v. American Fire & Casualty Co., 5 Fla.Supp. 129, which we find apposite to our own similar statute: "The real purpose of the statute was to eliminate technical distinctions between the offenses of larceny, embezzlement and obtaining money under false pretenses. Prior to the enactment thereof in 1951 it was not uncommon for a criminal prosecution to become confused and sometimes result in a miscarriage of justice because of the fine line of demarcation between these offenses as they had previously been defined by the legislature and the courts. The history of the times and of the particular legislation involved clearly indicates that the intent of the legislature was to eliminate this confusion and to simplify prosecutions involving the wrongful and criminal acquisition by one person of the property of another." Anglin v. Mayo, Fla., 88 So.2d 918, 922. See, also, State v. Pete, 206 La. 1078, 20 So.2d 368, 372.

█ Turning to the other objection, it is to be borne in mind that our question is not whether, in the absence of a statutory provision authorizing it, a general charge laid in the language of the statute is good. It is true that the indictment does not in express terms state that the act of stealing was committed either without the owner's consent or by means of deceit, but it does charge that the defendant "then and there feloniously and burglariously [the word "did" is here unfortunately omitted] steal, take and carry away" certain guns of Lloyd Norris and Vivion Anderson, etc. The omission of the word "did" is so "patent a clerical misprision as that it will be at once seen, understood and supplied by the most casual reader," and would not render the indictment bad. State v. Hawkins, Mo., 210 S.W. 4, 5. The critical words of the instant indictment are "feloniously * * * [did] steal, take and carry away." In considering the sufficiency of an indictment in State v. Dewitt, 152 Mo. 76, 53 S.W. 429, 431, it was said that the word "steal" means " 'to take and carry away, feloniously; to take without right or leave, and with intent to keep, wrongfully' (Webst. Int. Dict. 1408); so that when the indictment avers that the persons therein named did feloniously steal, take, and carry away two head of neat cattle, the property of one A. C. Street, it means that they took them with-

out right or leave, and with the intent to keep them, wrongfully." A taking without right or leave and with an intent to keep, wrongfully, is obviously a taking without the consent of the owner, so that an attack on the sufficiency of the indictment for failure to use the precise words of the statute in this regard (and raised for the first time after verdict) should be, and it is disallowed.

In January, 1956, Vivion Anderson and Lloyd Norris, as copartners, owned and operated a hardware store at the southeast corner of 16th and Swift in North Kansas City, known as the "A. & N. Hardware." In the year mentioned, New Year's Day fell on a Sunday, and the following day was observed as the holiday, in consequence of which the store was not open after the closing hour Saturday night until the following Tuesday morning. It is undisputed that during this interval the store was burglarized and six guns stolen from the stock of the store.

There was positive testimony that the store had been securely closed and locked on the preceding Saturday night. At about midnight on January 2 (the early morning of January 3), a police officer, driving south on Swift (on which the hardware store fronts), while stopped for a red traffic light at the intersection of Swift with 16th, noticed that the front door of the hardware store was standing open about six inches. When the light turned green and as the officer was preparing to make a left turn into 16th to investigate the open door, he "heard a motor revving up in another car," and upon looking around saw a car going at a fast rate of speed (and against the red) going west on 16th. The officer gave chase. The pursued car (a Buick sedan) proceeded west on 16th one block to Clay Street, then turned south on Clay and traveled about one-half a block, then turned east into a parking lot, and east across the parking lot until it reached switch tracks which run north and south, where the driver stopped the front end of his car. "The left front

door flew open and the fellow jumped out and he ran north up the switch track." The policeman pulled up immediately behind the Buick and "jumped out and gave chase on foot up the switch tracks, going on back towards 16th * * * and I was chasing him when he went around the corner off the switch tracks, around the corner of the Bellas-Hess Building." At this juncture and for a period of seconds, the man passed out of the sight of the policeman, but before leaving the police car the officer had radioed for assistance, and a second officer was enroute to the scene, having traveled south on Swift and turned west into 16th where he encountered a fleeing man proceeding east on 16th and apprehended him. Meanwhile, the first officer had reached a point where he could observe that the man was in the custody of the second officer, and he ran back to the parking lot and the abandoned car, and upon shining his flashlight therein discovered six guns on the floor board of the rear seat of the car, which were produced at the trial, and received in evidence. He also found a tire tool in the car.

■ The owner of the store identified all six guns as being those stolen from the store, two of them by serial numbers and the others by price tags he had affixed before the guns were stolen. There was a discrepancy in the proof as to the serial numbers, and defendant would make much of this circumstance. A clerk in the store testified he had taken the serial numbers on Saturday preceding the break-in, but a comparison with his listing showed the following: As to Exhibit 4, listed as 139548, the number actually imprinted on the rifle was 1395483; as to Exhibit 5, listed as 29135, the number imprinted on the gun was 29135A. We think these discrepancies were not such as would require that the guns be not received in evidence, because the jury could reasonably find that the added digit on one gun and the suffix "A" on the other had been misread. But, as indicated earlier, this was not the only proof of the identity of the guns. The owner positively identified all of them, and the police some of them.

On the question of identifying the defendant as being the person who was driving the Buick car and who fled up the switch tracks, it is sufficient to say that the proof showed that there were no other persons or cars in the area in question at the midnight hour when defendant was arrested. As to his being identified by the policeman who had given chase, the record shows the latter testified in that regard as follows:

"The Court: Let me ask you this question. Did you see the man you saw jump out of the car—that you chased up the tracks, as I remember it —after the officer arrested him?

"The Witness: Yes, sir, I seen the man, all I could tell—

"The Court: Who was that man; do you see him here today?

"The Witness: Yes, sir, at the time the man had dark clothes on, that is, at the time I was giving chase, but after I went into the station that was the man that Officer Jennings had picked up.

"The Court: Who is that man; do you see him here today?

"The Witness: Yes.

"The Court: Point him out.

"The Witness: Right there (pointing to defendant).

"By Mr. Pratt: You are referring, when you point to Mitchell Zammar, to the defendant in this case, who is sitting at the counsel table?

"The Witness: Yes."

Furthermore, the jury could have reasonably found from the expert testimony concerning the marks on the door where the break-in occurred that they were made by the identical tire tool found in the Buick. It would serve no useful purpose to further detail the evidence. It was ample to support the verdict.

We find no reversible error appearing in the other portions of the record which we are required to examine whether error is assigned thereon or not. The judgment is affirmed.

All concur.