## THE STATE v. JOHN PINTO, Appellant.

### Division Two, December 22, 1925.

1. **CORN WHISKEY**: Manufacture: Utensil: Barrel. A wooden barrel is not a utensil for the manufacture of corn whiskey unless so used.

2. ———: ———: Unlawful Purpose: Mash: Fermentation. A defendant cannot be guilty of manufacturing corn whiskey in violation of the statute (Laws 1923, p. 243) unless he manufactured it unlawfully; that is, for an unlawful purpose. And the fermentation of mash, consisting of corn meal and water, in a wooden barrel, is nothing unusual; and if defendant prepared such mash in a wooden barrel for hog feed and it fermented, causing the distillation of alcohol, he is guilty of no crime if his only purpose was to prepare hog feed; and where there is no evidence that the liquid found in the wooden barrel was drawn off by him or attempted to be used in any way for any other purpose than as hog feed, a conviction on a charge of manufacturing corn whiskey cannot stand.

3. ———: Search Warrant: Felony. A warrant is not necessary in order to authorize the arrest of a person who the arresting officer has reason to believe has committed a felony; and under the

Act of 1923 (Laws 1923, p. 243) a defendant charged with feloniously manufacturing intoxicating liquor commonly known as "corn whiskey" is charged with a felony, and consequently it is unnecessary to decide whether a search warrant issued to the sheriff to search defendant's premises was legally issued, where the search was made after defendant's arrest. Having information and reason to believe a felony was being committed on defendant's premises, and having arrested him, the sheriff had a right to search his premises for the purpose of discovering any violation of the law connected with the felony charged and incident to the arrest.

4. ———: **Search: Unnecessary Seizure.** Having arrested defendant on a charge of manufacturing corn whiskey, the act of the officer in carrying off of his saddle is apparently a lawless act. But if defendant is really violating the law, the officer is within his rights in taking his revolver, because it might indicate an armed resistance.

5. ———: ———: **On Another's Premises.** A search made in connection with the arrest of a defendant charged with a felony and after his arrest is not unreasonable or unlawful because made on the premises of other persons—in a house rented by defendant and situated on premises belonging to others.

6. ———: ———: **In Felony Case: Unlawful in Misdemeanor.** A search for evidence of a crime without a warrant cannot lawfully be made in a felony case where it would be unlawful in a misdemeanor case. In either case the search must be incidental to the arrest of the criminal. Section 25 of the Acts of 1923, Laws 1923, p. 246, empowering officers to seize certain unlawful apparatus used in the manufacture of intoxicating liquor, cannot be construed, under the Constitution, to authorize an unreasonable search.

7. ———: **Definition: Instructions.** Where defendant was charged with feloniously manufacturing one-half gallon of intoxicating liquor commonly known as "corn whiskey," instructions telling the jury that the offense of which he is charged is that of "manufacturing intoxicating liquor illegally" and that the manufacture of corn whiskey "is the commingling of some ingredients with corn in some form so that the process of fermentation will take place and a potable beverage containing more than one-half of one per cent of alcohol will be the final result thereof" are correct as far as they go, but are misleading, because they do not completely define "corn whiskey," and the latter one leaves out the unlawful element. "Corn whiskey" must be whiskey, not some other kind of liquor; it must be made of corn, or a product of corn must be an ingredient of its composition; it must be intoxicating liquor, that

State v. Pinto.

is, potable, or "capable of being used as a beverage;" and its manufacture, in order to constitute a felony, must be for an unlawful purpose.

8. ———: ———: **Moonshine.** The terms "hootch," "moonshine" and "corn whiskey," as used in the Acts of 1923, are not synonymous. "Moonshine" includes "corn whiskey," but is a broader term and is a name applied to other liquors than corn whiskey. And the same may be said of "hootch." All illegal corn whiskey is "moonshine," but all moonshine is not corn whiskey. [Modifying definition of "moonshine" attempted in State v. Brown, 304 Mo. 78.]

9. ———: ———: ———: **Statutory Classification.** The manufacture or sale of corn whiskey contrary to Section 20 of the Act of 1923 is an offense limited to a certain kind of whiskey. It does not include all liquors manufactured illegally. The act distinguishes between corn whiskey whose manufacture or sale is denounced as a felony, and other kinds of liquors whose manufacture or sale comes within the statute defining misdemeanors. It grades the series of offenses which may be committed in connection with intoxicating liquors, enumerating the different kinds of manufacture and other acts which it classified as felonies, and repealing certain sections of the liquor law which defined misdemeanors, leaving the greater part of it still in force.

Arrest, 5 C. J., Section 30, p. 399, n. 78; p. 400, n. 80. Corn, 13 C. J., p. 1237, n. 44. Hootch, 30 C. J., p. 458, n. 74 New. Intoxicating Liquors, 33 C. J., Section 13, p. 495, n. 66; Section 194, p. 577, n. 78; Section 195, p. 578, n. 91, 91 New; Section 196, p. 580, n. 20 New; Section 362, p. 669, n. 56; Section 376, p. 679, n. 53 New; Section 547, p. 790, n. 37; Section 550, p. 794, n. 86. Moonshine, 41 C. J., p. 211, n. 31. Searches and Seizures, 35 Cyc., p. 1266, n. 12 New.

Appeal from Macon Circuit Court.—*Hon. V. L. Drain,* Judge.

Reversed and remanded.

*Wm. M. Van Cleve* and *Waldo Edwards* for appellant.

(1) The instruction requested by the appellant in the nature of a demurrer to the State's evidence should have been given. Nowhere in all of this testimony was there any evidence that the defendant manufactured corn whiskey. There was no evidence that the defendant manufactured any intoxicating liquor of any kind. There

was no evidence that the defendant had in his posses-
sion any intoxicating liquor. All of the witnesses tes-
tified that it was not intoxicating liquor. One charged
with the commission of a crime cannot be convicted upon
suspicious circumstances. State v. Elmer, 267 S. W. 934;
State v. Smith, 261 S. W. 696; State v. McIntyre, 256
S. W. 141; State v. Craft, 246 S. W. 930; State v. Weag-
ley, 240 S. W. 822; State v. St. Clair, 247 S. W. 203; State
v. Morrison, 240 S. W. 822; State v. Mackey, 267 S. W.
5; State v. Goodson, 299 Mo. 321. (2) The search war-
rant issued in this cause was illegal and void and any
evidence obtained thereunder or by virtue thereof, should
have been suppressed. The search warrant served was
not the search warrant introduced in evidence. Some-
one changed the description of the premises after the
search was made. Any evidence obtained by virtue of
an illegal and void search warrant should be suppressed
on motion therefor. State v. Locke, 302 Mo. 400; State
v. Owens, 302 Mo. 348; State v. Hyde, 297 Mo. 213. (3)
The court should have defined the meaning of the term,
"corn whiskey" in an instruction to the jury. The de-
fendant was charged with the felonious manufacture of
"corn whiskey" and the court should have told the jury
the meaning of this term. It is elemental that where
technical terms are used, or terms of particular mean-
ing, they should be defined in instructions. (4) The
court erred in giving to the jury plaintiff's Instruction
3. This instruction told the jury that the offense charged
against the defendant was the manufacturing of intoxi-
cating liquor illegally, and if they found the defendant
guilty they should assess his punishment at that pre-
scribed in the statute. The charge in this information
was that the defendant manufactured corn whiskey fe-
loniously and unlawfully, and this instruction was broad-
er than the pleadings and was reversible error. (5) The
court erred in giving to the jury plaintiff's Instruction 4.
This instruction attempts to define the term "corn whis-
key" as used in the information. It is not a proper defi-

nition of that term.   Corn whiskey, as used in the stat-
ute, under which this prosecution was brought, means
"moonshine" or "hootch" and means whiskey un-
lawfully manufactured.   Under this attempted defi-
nition, it would not be necessary for the jury to find
that the defendant even made any whiskey, and to con-
vict the defendant, it was necessary that the jury should
find that he unlawfully manufactured corn whiskey.  State
v. Brown, 262 S. W. 710; State v. Gatlin, 267 S. W. 797.
(6)   The court erred in failing to instruct the jury at
the close of all of the evidence in the case that the de-
fendant was not guilty.   The most favorable construc-
tion that can be placed on the State's evidence is that
the defendant was in the possession of mash.   The stat-
ute does not prohibit the possession of mash.   Posses-
sion of mash does not prove a charge of manufacturing
whiskey.   State v. Day, 245 S. W. 571; State v. Smith,
261 S. W. 696; State v. Keithley, 266 S. W. 739.

*Robert W. Otto*, Attorney-General, and *James A.
Potter*, Special Assistant Attorney-General, for respond-
ent.

(1)   Where there is any evidence of defendant's
guilt, the demurrer to the evidence is properly overruled.
State v. Warner, 74 Mo. 83; State v. Pollard, 174 Mo. 607;
State v. Hughes, 258 Mo. 272; State v. Belknap, 221 S. W.
45; State v. Jenkins, 225 S. W. 989; State v. Loness, 238
S. W. 113; State v. Jackson, 283 Mo. 24; State v. Has-
call, 284 Mo. 616; State v. Mann, 217 S. W. 67.   (2)   In-
structions 3, 4 and 5 given by the court were in proper
form.   State v. Brown, 262 S. W. 710; State v. Combs,
273 S. W. 1037.   (3)   Instructions 3, 4 and 5 were er-
roneous.   State v. Gatlin, 267 S. W. 797.

WHITE, J.—In the Circuit Court of Macon County
the defendant was charged with feloniously manufactur-
ing one-half gallon of intoxicating liquor commonly known
as "corn whiskey."   On a trial before a jury, July 3,
1924, he was found guilty, and his punishment assessed

at three months in the county jail. He appealed from the judgment thereupon rendered.

I. It is earnestly insisted by the appellant that a case was not made out, and his demurrer to the evidence should have been sustained.

The Sheriff of Macon County, William Banta, armed with what he thought was a search warrant, went to the premises of the defendant, Pinto, accompanied by Albert C. Nichols, Marshal of Macon, and found on the premises, about one hundred yards from the house, a barrel of what he called mash. It was in a wooden barrel and appeared to be corn meal mixed with water. This stuff had fermented. It was poured out and some of the liquid was preserved by the sheriff for evidence. A tub was turned over the barrel when he found it. The sheriff testified that he was raised on a farm, and he knew that mixtures like that were made for hogs, and that it ferments. All he found of the stuff was one barrel. He also found on the back porch of the house a sack of sugar and two sacks of corn chops. He returned later and took those articles. When the sheriff appeared on the premises and told the defendant he had a search warrant, the defendant told him to go ahead and search. He found no still on the premises, no worm, no coils, doubler or mash tubs, nor any utensils which the statute enumerates as used in the manufacture of intoxicating liquor, and which we may presume are for that purpose.

The sheriff was then asked if the liquid which he took from the barrel after emptying the mash was corn whiskey. His answer was, "No, sir." He was asked if it was capable of being drunk. He said he didn't know. He was asked if he found any corn whiskey of any kind on the place. He answered, "No, sir." He was asked if he found any place where a still had been operated. He answered, "No, sir." He was asked if he found any place where there had been fire and mash

had been thrown out after the distillation, and he answered "No, sir."

Mr. Nichols, who accompanied the sheriff in making the search, described the barrel and said it had a paddle in it for stirring purposes. He said he was not familiar with the different processes by which the matured product of corn whiskey is derived. The defendant objected to the pouring out of his barrel of mash, and.told the officers that he had prepared it for his hogs. Nichols was asked if the juice which was preserved by the officer was similar to "hootch." He said: "It has got a similarity to it." He was asked if it was intoxicating. A proper objection to the question, on the ground that the witness had not qualified either as an expert or by experimenting with the liquor, was overruled. He answered that he would not want to drink it unless he wanted to get intoxicated, but he would not say positively whether it was intoxicating or not. He said, "I can't state positively what it is." And then he said: "It is what they call corn whiskey." He further testified that there was something sweet in the bottom of the barrel that tasted like sugar sweet. He was asked if the stuff he took from the barrel was fit for drinking purposes. He said he didn't think it would be safe to drink it.

No doubt the defendant placed the corn meal in the barrel with water. The result was fermentation, and some of the liquid resulting was preserved and presented as evidence in the case. No one tasted it or subjected it to any other test. There was no evidence as to what different processes and utensils are employed in the manufacture of corn whiskey. If the statute correctly enumerates them, then there was no discovery by the officers of the necessary apparatus for manufacturing corn whiskey in the defendant's possession. The officers swore they made a thorough search of the premises and found no such apparatus. The wooden barrel was not a utensil for such purpose unless it was so used. [State v. Griffith, 311 Mo. 630.] The fermentation of the mash

which the defendant said he prepared was nothing un-usual. The defendant could not be guilty of manufac-turing corn whiskey in violation of the statute unless he manufactured it unlawfully; that is, for an unlawful pur-pose. [Sec. 20, p. 242, Laws 1923.] If, as a matter of fact, he prepared mash for hog feed and it fermented, causing the distillation of alcohol, he would be guilty of no crime if his only purpose was to prepare hog feed. There was no evidence that the liquid which was found in the barrel was drawn off by defendant or attempted to be used in any way for any other purpose than what he said. So we think a case was not made out for the jury on the charge of manufacturing corn whiskey. The most that can be said is that possibly the defendant was ex-perimenting in an attempt to violate the law, but did not know how, and circumstances justify only a mere sus-picion of such unlawful purpose. We cannot convict a man of crime on suspicion, nor for merely harboring a criminal purpose.

II. Much of the defense turned upon the legality of the search warrant. The defendant moved to quash it and suppress the evidence discovered by it, Search Warrant. and the motion was overruled. We think it un-necessary to pass upon that question.

Under the Act of 1923 the defendant was charged with the commission of a felony. It appears that the sheriff had information and reason to believe a felony was being committed on defendant's premises, and nat-urally by defendant. With that information, whether a search warrant was issued or not, the sheriff had a right to arrest the defendant or anyone else who was in charge of or conducting the unlawful business. This court has repeatedly held that a warrant is not necessary in order to authorize the arrest of a person who the arresting officer has a reason to believe has committed a felony. [State v. Owen, 259 S. W. l. c. 101, and cases cited on that point; State v. Moore, 235 S. W. l. c. 1058.]

After having arrested the defendant the sheriff had a right to search the premises where the arrest was made for the purpose of discovering any violation of the law. [State v. Owen, 259 S. W. l. c. 101; State v. Rebasti, 306 Mo. 336, and cases cited.]

The United States Supreme Court in a case decided October, 1925, Agnello v. United States, 269 U. S. 20, had this question under consideration, and said: ''The right without a search warrant contemporaneously to search persons lawfully arrested while committing a crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted.''

The evidence indicates that the search and the discovery of the sugar and chops on the porch of the defendant's house was after the arrest and entirely within the rights of the officers. It was incident to the arrest. The officers' search extended into the house of the defendant where they found and seized a revolver and a saddle. All of this, it seems, took place after the arrest. The sheriff was within his rights in taking the revolver if the defendant was really violating the law, because it might indicate an armed resistance to law officers. But no explanation is given of the apparently lawless conduct on the part of the sheriff in carrying off the defendant's saddle.

The barrel of mash was found before the arrest, one hundred yards from the house. A search is not unreasonable nor unlawful, so far as the defendant is concerned, when made on the premises of other persons. [State v. Fenley, 275 S. W. l. c. 39-40.] These premises belonged to another person and the house where the defendant lived was rented by him. It is not clear that any search was necessary to discover the barrel, nor was it shown that the barrel was on that part of the place which the defendant rented. The constitutional restriction forbids unreasonable search of ''*persons, papers, homes* and *effects.*''

We must not be understood as holding that *search for evidence* of a crime may be made without a search warrant in a felony case where it would be unlawful in a misdemeanor case. Such search without a warrant in a felony case, the same as in a misdemeanor case, must be incidental to the arrest of the criminal.

The provision in Section 25, Laws 1923, p. 246, empowering officers without a search warrant to *seize* certain unlawful apparatus, cannot be construed, under the Constitution, to authorize an unreasonable search as the same has been defined by the courts.

III. Instructions 3 and 4, given by the court at the request of the State, were objected to.

Instruction 3 told the jury that the offense of which the defendant was charged was that of "manufacturing intoxicating liquor illegally." Instruction 4 told them that the manufacture of corn whiskey "is the commingling of some ingredients with corn in some form so that the process of fermentation will take place and a potable beverage containing more than one-half of one per cent of alcohol will be the final result thereof." These are correct as far as they go, but are misleading because they do not completely define "corn whiskey," and number 4 leaves out the unlawful element.

Undoubtedly, the manufacture or sale of corn whiskey contrary to Section 20 of the Acts of 1923, is an offense limited to a certain kind of liquor. It does not include all liquor manufactured illegally. The Legislature intended to distinguish between corn whiskey, whose manufacture and sale was denounced as a felony, and other kinds of liquors, the manufacture or sale of which comes within the statute defining misdemeanors, and to grade the series of offenses which might be committed in connection with intoxicating liquor. The Act of 1923 expressly repealed certain sections of the liquor law which defined misdemeanors, leaving the greater part of it still in force. The Legislature also enumerated the different kinds of manufacture which could be classed as

felonies, and further classified criminal acts in connection with different kinds of liquors. Section 2 of the Act of 1923 makes it a felony to use a still, worm, or brewing equipment, etc., and makes it a misdemeanor to have such equipment in possession and not using it. Section 3 forbids the manufacturer of imitation beer to remove the same from the vats during the process of dealcoholization, for any purpose except manufacture or laboratory purposes, and a violation of that provision is denounced as a felony. Section 4 makes it a felony to reclaim ethyl alcohol that has been denatured. Section 13 makes it a felony to manufacture ethyl alcohol except upon certain conditions. Section 20, which denounces "corn whiskey," distinguishes it from "other intoxicating liquor which may cause insanity or blindness." Thus it is quite apparent that the Legislature intended to cover every form of dealing with intoxicating liquors, and intended to be specific in their classification. By corn whiskey undoubtedly was meant a liquor entirely distinct from those synthetic liquors which are made from alcohol, whether reclaimed or otherwise.

The misdemeanor statute covers all kinds of liquors except those specifically described and provided for in the Act of 1923. In the case of State v. Brown, 304 Mo. 78, 262 S. W. 710, we attempted a definition of "moonshine," which has caused some misunderstanding and confusion, because the definition of "moonshine" has been applied to "corn whiskey." On further consideration of the matter, in view of the several provisions above referred to, we are convinced that we were wrong in holding the term "hootch," "moonshine" and "corn whiskey" to be synonymous. From the well-known use of those terms, it is probable that the word *"or"* should be understood between "hootch" and "corn whiskey," as they appear in Section 20 of the Act of 1923. As a matter of common knowledge, moonshine is a name applied to other liquors than corn whiskey. It is a broader term and includes the corn whiskey denounced by the

statute. The same may be said of "hootch." That is what we should have said in the Brown case, as our understanding of the legislative intention. All illegal corn whiskey is moonshine, but all moonshine is not corn whiskey.

In order that the manufacture, sale or transportation of it may be a crime, corn whiskey must be other than liquor otherwise mentioned in the statute. The Legislature did not define it, presuming possibly that everybody knows what it is. The words must be taken in their ordinary meaning and import. Therefore, corn whiskey must be *whiskey*, not some other kind of liquor; it must be made of *corn*, or a product of corn must be an ingredient of its composition. The fact that the Legislature chose to call it also "moonshine" does not enlarge the content of the term "corn whiskey." If the lawmakers, as further descriptive of it, had used the definitive and well-understood term "white mule" probably less doubt would have arisen over the kind of liquor meant. Further, it must be intoxicating liquor, that is, potable, or "capable of being used as a beverage," as defined in Section 6602, Revised Statutes 1919. With all the mutations of the liquor law since the revision of 1919, that section has never been repealed or amended, and that definition is still in force.

We are not called upon now to define the terms "hootch" and "moonshine" because they are applied in this case, and in all other cases where the matter has come before us, to "corn whiskey." If those terms are applied to some other alcoholic drink in a case that may come before us, it will be time enough to define them.

The judgment is reversed and the cause remanded. All concur.