**STATE of Missouri, Respondent,**

v.

**Robert Nelson NORRIS, Appellant.**

**No. 54349.**

Supreme Court of Missouri,
En Banc.

Dec. 14, 1970.

John C. Danforth, Atty. Gen., Gene E. Voigts, Asst. Atty. Gen., Jefferson City, for respondent.

John G. Doyen, Clayton, for appellant.

HOLMAN, Judge.

Defendant was charged with the unlawful possession of a narcotic drug, to wit: cannabis, commonly known as marijuana. He was also charged with a prior felony conviction. See §§ 195.020, 195.200, and 556.280, V.A.M.S. At the conclusion of a hearing outside the presence of the jury the court found that, on January 15, 1958, defendant was convicted of the felony of unlawful possession of a narcotic drug in the Circuit Court of Cook County, Illinois, and sentenced to imprisonment for a period of two years and was thereafter imprisoned. The jury found defendant guilty of the offense charged. The court fixed his punishment at imprisonment for a period of 15 years. Defendant has duly appealed. This case has recently come to the undersigned upon reassignment.

The marijuana here involved was found in a search of defendant's residence. Prior to trial defendant filed a motion to suppress the evidence relating to it, alleging that the police did not have a search warrant and no reasonable ground to search, and hence such was in violation of federal and state constitutional provisions. The court heard evidence on that motion and it was overruled. After the appeal was submitted here we made an order directing the trial court to hold an additional hearing on the issue of the relationship of the arrest and the scope of the search, and to make findings of fact thereon. That has been done and the transcript thereof and findings have been filed in this court. In our statement of facts relating to the motion to suppress we will combine the evidence adduced at the two hearings, as follows:

A warrant was issued for the arrest of the defendant for the sale of marijuana on August 15, 1967. The officers went to his home at 5723 McHenry Street in Kinloch twice during the next week but were unable to find defendant at home. On August 22, three St. Louis County officers went to the residence of defendant. Defendant answered the door, the officers entered, and he was immediately placed under arrest. No other person was in the residence except defendant's wife. The officers proceeded at once to search the residence. The residence was a one-story house with a basement. There were four rooms and a bath, all entering into a central hallway. There was a living room in the northeast corner, an empty room in the southeast corner, a bedroom in the southwest corner, a kitchen in the northwest corner, and a bathroom between the bedroom and kitchen. The officers found a quantity of marijuana in a portable metal closet in the bedroom. It was found about ten minutes after the search began and at that time defendant was standing in the hallway about 20 feet away. The officers spent about 30 minutes searching the house. At sometime after the marijuana was found a Kinloch policeman arrived and took defendant to the Kinloch police station and booked him. He then returned defendant to his home where the St. Louis County police officers again took him into custody and transported him to the county police station. The officers were at the defendant's home about one and one half hours that morning.

It was brought out at the second hearing that the sale for which the warrant had been issued had been made through an informant whose name was Gary Blackwood. The officers did not have a search warrant on the occasion in question.

At the conclusion of the second hearing the trial court made a finding which detailed the relevant facts and concluded with the finding that "the search of the premises incidental to the arrest of the defendant was proper and reasonable under the then existing law and further that said search was reasonably related in scope to the arrest of the defendant on the prior sale of a narcotic drug, to wit: marijuana."

At the trial of the case the two police officers who had testified at the hearing on the motion to suppress testified to about the same facts as heretofore stated. One additional fact is that the officers gave defendant a warning concerning his constitu-

tional rights, and then, in response to a question, defendant stated that he resided at that address. Additionally, Robert Roither, a police department chemist, testified that he had examined and tested the contents of a package delivered to his office by the police and found it to be marijuana. The package delivered to the chemist had been properly identified as containing the substance that had been found in defendant's residence.

The defendant offered no evidence.

■ The first point stated by defendant in his brief is that "the trial court erred in failing to suppress as evidence State's Exhibit 'A' [marijuana] that was seized by police officers after a search without a warrant because: A. The search and seizure were not incidental to the arrest. B. There was no probable cause to believe the offense of possession of narcotics was being committed." It is undisputed that the arrest of defendant, made under the authority of a warrant, was lawful. "It is further well settled that when a person has been lawfully arrested, a search without a warrant may be made of the person and of the premises where he was arrested." State v. Jefferson, Mo.Sup., 391 S.W.2d 885, 888. See also State v. Novak, Mo.Sup., 428 S.W.2d 585 [9]; State v. Edwards, Mo.Sup., 317 S.W.2d 441 [2, 3]; State v. Darabcsek, Mo.Sup., 412 S.W.2d 97 [4, 5, 6]; State v. Carenza, 357 Mo. 1172, 212 S.W.2d 743 [2]; State v. Hadlock, 316 Mo. 1, 289 S.W. 945 [4], and State v. Pinto, 312 Mo. 99, 279 S.W. 144 [6].

■ The Supreme Court of the United States has said that "[w]hat is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. Go-Bart Importing Co. v. United States, 282 U.S. 344, 357,

51 S.Ct. 153, 158, 75 L.Ed. 374. Reasonableness is in the first instance for the District Court to determine. We think the District Court's conclusion that here the search and seizure were reasonable should be sustained because: (1) the search and seizure were incident to a valid arrest; * * * " United States v. Rabinowitz, 339 U.S. 56, 63, 70 S.Ct. 430, 434, 94 L.Ed. 2d 653. We have difficulty in understanding the contention that this search was not incidental to the arrest. "Incident" has been defined as "dependent on or appertaining to another thing: directly and immediately relating to or involved in something else though not an essential part of it." Webster's Third New International Dictionary. In this case the search took place immediately after the arrest of defendant and the marijuana was found 10 or 15 minutes thereafter. The search was reasonably conducted in that it involved a small house, was done in an orderly fashion with defendant present, and was concluded within a relatively short time. In the argument portion of his brief defendant first says the search was unlawful because the police had no search warrant, but of course that is not true where, as here, it was incident to a lawful arrest. He next says that this search does not come within that exception because the arrest and search did not take place contemporaneously. That is obviously not supported by the facts. The next assertion is that the search was not justified because "there was time for the arresting officers to obtain a search warrant." This contention was ruled adversely to the defendant in Rabinowitz, supra, as follows: "Assuming that the officers had time to procure a search warrant, were they bound to do so? We think not, because the search was otherwise reasonable, as previously concluded. In a recent opinion, Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, this Court first enunciated the requirement that search warrants must be procured when 'practicable' in a case of search incident to arrest. On the occasion of the previous suggestion of such a test, Taylor v. United

States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951, the Court had been scrupulous to restrict the opinion to the familiar situation there presented. * * * A rule of thumb requiring that a search warrant always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystalized into a *sine qua non* to the reasonableness of a search. * * * Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required." 339 U.S. 64, 65, 66, 70 S.Ct. 434, 435. In support of his contention defendant cited the Trupiano case but frankly conceded that it had been rejected by Rabinowitz.

■ The final contention relating to the search is that "the arresting officers had no probable cause for believing that the appellant had narcotics in his possession." Under this point defendant makes the contention that the police officers did not have sufficient information in their possession to have constituted probable cause upon which they could have obtained a search warrant. We consider that discussion to be totally irrelevant. It is conceded that the officers did not have a search warrant and that the validity of the search depends on it being incident to a lawful arrest.

The foregoing disposes of defendant's contentions in regard to the search and, as indicated, we rule that the evidence obtained was admissible because the search was lawful and did not violate the constitutional provisions against unreasonable searches. Defendant has cited a number of decisions of the Supreme Court of the United States in support of his various contentions relating to the search. We have considered all of them but find that they are not applicable because of distinguishing fact situations. In addition to the cases we have cited we think our ruling is supported by Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, and Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668.

It should be noted that after the submission of this case the United States Supreme Court decided Chimel v. State of California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, which restricts the permissible area of search as an incident to a lawful arrest. We will not discuss that case because we do not consider it applicable to this decision. This, for the reason that it has not been held that Chimel should be applied restrospectively, and, in our judgment, it should not be so applied. See Spidle v. State, Mo.Sup., 446 S.W.2d 793, and Halliday v. United States, 394 U.S. 831, 89 .S.Ct. 1498, 23 L.Ed.2d 16. Also, it should perhaps be mentioned that some of the cases we have read attach significance to the object and purpose of the officers in making a search incident to an arrest. As shown by our factual statement there was no evidence relating to the object in this case. Defendant has made no contention that the object here was illegal or improper and if he had desired to do so he would have had the burden to offer evidence to prove such. State v. Duisen, Mo.Sup., 403 S.W.2d 574 [2]. In that connection we call attention to the fact that in this instance the officers, in making the search and seizing the marijuana, were obeying the mandate of § 195.135(2), RSMo 1959, V.A.M.S., which provides: "Any peace officer of the state, upon making an arrest for a violation of this law, shall seize without warrant any narcotic drug * * * in the possession or under the control of the person or persons arrested, providing said seizure shall be made incident to the arrest."

The next point briefed is that the court erred in giving Instruction No. 1. Portions of that instruction are as follows:

"The Court instructs the jury that if you find and believe from the evidence in this case beyond a reasonable doubt

and in the light of these instructions of the Court that in the County of St. Louis and State of Missouri on the 22nd day of August, 1967, the defendant, Robert Nelson Norris, did wilfully, unlawfully and feloniously have in his possession and under his control a certain narcotic drug, to wit: approximately eleven grams of cannabis sativa, otherwise known as marijuana, as mentioned in the evidence, then you will find the defendant guilty of Unlawful Possession of Narcotic Drug. Unless you so find the facts to be as aforesaid, you will acquit the defendant.

" 'Feloniously' as that term is used in these instructions, means wickedly and against the admonition of the law, that is, unlawfully.

" 'Possession' as that term is used in these instructions and in its legal sense, means having the actual control, care and management of something to the exclusion of others, and not a mere passing control fleeting and shadowy in its nature. However, it is not necessary to prove ownership in order to prove possession. Furthermore, in order to prove the alleged offense the evidence need not show actual physical possession on the part of the defendant. The illegal possession, if you so find, may be constructive."

The instruction is supported generally by statements and rulings in State v. Virdure, Mo.Sup., 371 S.W.2d 196; State v. Worley, Mo.Sup., 375 S.W.2d 44, and State v. Young, Mo.Sup., 427 S.W.2d 510. Defendant specifically complains that the instruction uses the word "constructive," as relates to possession, without defining it. He cites the case of City of St. Louis v. James Braudis Coal Co., Mo.App., 137 S.W.2d 668, which holds that when words are used in a peculiar or technical sense in an instruction they should be explained.

■ We have concluded that the court did not err in failing to specifically define the word "constructive." A reading of the entire paragraph relating to possession will show that it does actually explain constructive possession. When that explanation of the word "possession," as used in a legal sense, is considered in connection with the fact that there was no contention in this case that the drug was on defendant's person, we think the instruction was not confusing. We think any juror would reasonably have understood that the question for determination was whether the drug found in the bedroom was in the "possession" of defendant.

■ Another contention of error is that the instruction did not require a finding that defendant possessed the drug "knowingly and intentionally" and that the court should not have refused his offered Instruction "A", which included those words. We do not think it was necessary for the instruction to include the words mentioned. This because it required a finding that the possession was had wilfully, unlawfully, and feloniously. The word "wilful" is defined as "done deliberately: not accidental or without purpose: intentional." Webster's Third New International Dictionary. Its meaning is well known. The words "feloniously" and "unlawfully" also import intentional acts.

As indicated, we rule that the court did not err in giving Instruction No. 1.

■ The final point is that the trial court erred in failing to require the State to produce the unidentified informant at the pretrial hearing of the motion to suppress. There is nothing in the transcript to support a consideration of this point. Nothing in the record indicates that defendant made any request that the informant be produced. It is therefore obvious that the contention is without merit, and it is accordingly denied.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by HOLMAN, J., is adopted as the opinion of the Court.

HENLEY, C. J., and FINCH, DONNELLY, MORGAN, HOLMAN, and BARDGETT, JJ., concur.

SEILER, P. J., dissents in separate dissenting opinion filed.

SEILER, Presiding Judge (dissenting).

I respectfully dissent. The search of defendant's house, even though it was a small house,[1] was a general, exploratory search. The officers testified they went through the entire house, "looking for things". They did not see or seize any article in plain view.[2] Defendant was arrested under a warrant for a sale of marijuana made a week earlier. The only probable cause the officers had to make any warrantless search would be in relation to what they were after him for—a specific sale on a prior occasion. There was no probable cause for going beyond that. Search incident to an arrest made at home for a specific sale which occurred a week earlier does not give the officers the right to look through the house for whatever might be turned up. If it does, nothing in a man's house would be safe from the police if he were arrested at home, no matter where or when he committed the offense or what it was.

Inherent in this case and fairly raised by defendant's contentions that the search and seizure were not incident to the arrest and that there was no probable cause to warrant the search and seizure which led to the discovery of the marijuana and the subsequent charge of possession, is this question: where the police have an arrest warrant for defendant for offense A, under which he is arrested at his home, and a search is then made of his house, not for evidence relating to offense A, but in which evidence of commission of offense B is uncovered, is the search for such evidence and its products, admissible, over objection, in the trial for offense B, as being incidental to the lawful arrest for offense A? This comes down to a question of whether there was probable cause for the search. In my opinion, with all deference, this question is not answered simply by saying the law is well established there can be a search incident to a lawful arrest. Granted, but the question inherent in the case before us is, *was* this search incident to the arrest for offense A (selling on an earlier occasion), where the conviction is for offense B (possession on a later occasion)?[3]

While the language of some Missouri cases is broad enough, taken literally, to

---

1. Large or small, it was defendant's home and above all else, the constitutional search and seizure provisions should apply to one's home. Art. I, Sec. 15, 1945 Constitution, V.A.M.S., uses the word "homes" as one of the places where the people shall be secure against unreasonable searches and seizures.

2. Again, I must respectfully differ as to what the record shows as to the nature and extent of the search made. Defendant was handcuffed within a minute or two of the time the officers entered the house. From then on there were at all times from three to four police officers in the house. Once handcuffed and with that many policemen present, defendant's chance of escape, or harming the policemen, or destroying anything on the premises, evaporated into nothingness and along with it, the necessity or justification to make any general search or seizure so far as the arrest for a sale made a week earlier was concerned.

The search, made thereafter, covered every room in the house and the basement. Two officers searched while one guarded the prisoner. The search included looking in the stove, cupboards, and under the kitchen sink. The officer in command was on the premises an hour and a half. He testified the marijuana was found in the last room he looked into. It appears to me there was an unrestrained rummaging about defendant's house by the officers, which was not halted until they covered the entire house, even with the testimony that the marijuana was uncovered about 10 minutes after the search began.

3. Sec. 195.135(2) cited in the majority opinion, does not change the basic constitutional considerations involved and, in fact, specifically recognizes this, by providing that " * * * said seizure shall be made incident to the arrest."

seem to permit a general exploratory search of the complete premises for whatever may be turned up wherever a person has been lawfully arrested, an examination of the facts in the Missouri decisions cited in the majority opinion shows the searches approved have actually been ones where the search and the articles found did not extend beyond the limits of probable cause which existed at the time of the arrest— such as seizing the syringe and needle containing the drug, held by defendant in his hand when the officers entered the premises, State v. Jefferson (Mo.Sup.) 391 S.W. 2d 885, or boxes of merchandise from the store which had been burglarized a short time earlier, found on the floor in defendant's apartment immediately following his arrest therein for the burglary, State v. Novak (Mo.Sup.) 428 S.W.2d 585, or heroin found under the front seat of the automobile defendant was driving when arrested, State v. Edwards (Mo.Sup.Banc) 317 S.W.2d 441,[4] or stimulant pills found on defendant's person when he was searched at the jail as a part of the booking procedure, State v. Darabcsek (Mo. Sup.) 412 S.W.2d 97, or the pistol used to beat the deceased, found in defendant's house where he was arrested on a murder charge, State v. Carenza, 357 Mo. 1172, 212 S.W.2d 743, or the piece of beef found on the premises where defendant was arrested for killing a calf with intent to convert the carcass, State v. Hadlock, 316 Mo. 1, 289 S.W. 945, or the sugar and chops found on the porch when defendant was arrested at his house for manufacturing corn whiskey, State v. Pinto, 312 Mo. 99, 279 S.W. 144. In this last cited case, the court quoted from Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145, that there is a right, in connection with a lawful arrest, " * * * to search the place where the arrest is made *in order to find and seize things connected with the crime* as its fruits or as the means by which it was committed * *." (Emphasis supplied.)

None of the Missouri cases cited in the majority opinion uphold a general search of the premises for incriminating evidence as to which the officers had no probable cause to make a search, nor do the federal cases cited.

In United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, cited in the majority opinion, the officers had an arrest warrant for sale of four forged stamps. Defendant was arrested at his place of business and then the officers searched his one-room office, including desk, safe, and file cabinets. They found 573 forged stamps. He was then indicted on two counts, one for the sale of the four stamps and the other for possession of the 573 stamps. The court upheld the search and seizure, but pointed out that the arrest warrant was broad enough to cover the crime of possession charged in the second count, as well as the sale charged in the first count. The court also pointed out the search "was not general or exploratory for whatever might be turned up" and that "Specificity was the mark of the search and seizure here", that the search was for illegal stamps, as to which the officers had good reason to believe were in defendant's possession in the very room where arrested, 339 U.S. l. c. 62–63, 70 S.Ct. l. c. 434. I do not see where the Rabinowitz case supports the search and seizure in the present case, where complete lack of specificity was the mark of the search and seizure. Rabinowitz also gave additional reasons for sustaining the search and seizure, among which were that the room was a business room to which the public was invited and the search did not extend beyond the room. Neither reason exists in the case before us.

Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, does not, it seems

---

4. The validity of this search of the automobile, made at the police station subsequent to arrest, seems doubtful under State v. Edmonson (Mo.Sup.) 379 S.W.2d 486, and Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, which struck down searches which were remote from the place of arrest.

to me, support the search and seizure made in the present case. In the first place, in Ker the marijuana which the officers found on the kitchen sink was connected with the arrest which the officers were making of defendant, George Ker. He and his wife were charged with possession and it was for this contemporaneous possession that the officers had probable cause for arresting Ker. The situation was not one where the officers had a warrant to arrest the defendant for one offense and then, following that lawful arrest, searched the premises and found evidence which was the basis for a conviction on an entirely different charge. In the second place, the opinion from which the quotation is taken did not receive a carrying vote, as only four justices concurred in the part which upheld the search as being lawful as an incident to the arrest. One justice concurred in result. Four other justices took the view that constitutional standards were violated because of the unannounced entry of the arresting officers into the Ker apartment.

In Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668, there was an arrest by agents of the immigration and naturalization service, a preliminary to deportation on the ground of illegal residence. The question before the court was as to the validity of the search of defendant's hotel room and the adjoining bathroom, in the course of which search various items were found which were admitted against defendant in the trial of a different charge, espionage. However, it is to be noted that at 362 U.S. 237, 80 S.Ct. 683, the court points out that the purpose of the search in addition to looking for weapons, was for documents connected with defendant's status as an alien, which could be considered as instruments or means for accomplishing his illegal status. Thus, the search in Abel was based on probable cause in connection with the administrative arrest preliminary to deportation for illegal residence.

In the case at bar, however, there is nothing in the record to show that the search which the police made of defendant's house was for anything connected with defendant's having made a sale of marijuana one week earlier. When this case was originally heard here, it was sent back to the trial court for further hearing on the precise point of whether the search conducted was reasonably related in scope to the arrest on the charge of a prior sale of a stimulant drug. The officers had no search warrant and it was, therefore, incumbent upon the state to show that one of the specifically defined circumstances constituting an exception to the general rule existed in this case to justify the search. See McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153, where it is stated " * * * And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." See also, United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 95 L.Ed. 59, where it is stated " * * * Over and again this Court has emphasized that the mandate of the Amendment rquires adherence to judicial processes * * * Only where incident to a valid arrest * * * or in 'exceptional circumstances' * * * may an exception lie, and then the burden is on those seeking the exemption to show the need for it * * *" Accord: People v. Dickerson (Cal.App.) 78 Cal.Rptr. 400, 404.

No such evidence was forthcoming at the supplemental hearing. On the contrary, defendant there brought out on cross-examination of one of the arresting officers that the officer went through the entire house looking for things and that one of the officers also went down to the basement. The officer who found the marijuana in the search of the house was the same officer who witnessed the August 15, 1967 sale made to an informant and on which the police obtained the arrest war-

rant. As the majority opinion says, one meaning of "incident" is "dependent on or appertaining to another thing: directly and immediately relating to * * *" It seems to me there was a complete absence of any showing that the search and seizure here was in any way appertaining or immediately related to the arrest for the sale a week earlier. I do not believe that possession of marijuana on August 22, would be admissible to show a sale of marijuana on August 15.

The United States Supreme Court case which has gone the farthest in allowing a search of the premises as incidental to a valid arrest is, of course, Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.[5] However, even in that case it is quite clear that the search of the bureau drawer in the bedroom, where the agents found the forged draft card materials, was actually part of a search which they were making to find certain cancelled checks which were directly connected with the crime for which the defendant was arrested. At 331 U.S. 1. c. 153, 67 S.Ct. 1098, the court is explicit that the search was specifically directed to the means and instrumentalities by which the crimes charged against defendant had been committed. We do not have a comparable situation in the case at bar, because the St. Louis police do not even contend they were looking for anything connected with the sale made a week earlier which had been witnessed by one of their officers.

In Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, a search and seizure case where there was a rare unanimous opinion, the court made it clear what search and seizure can be considered justified as incidental to a lawful arrest, saying at 376 U.S. 367, 84 S.Ct. 883: " * * * The rule allowing contempora-

neous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime * * *." The court was referring to the crime for which the arrest was being made. In Preston the men were arrested for vagrancy. Their automobile was searched at the police station and equipment found which was suitable for robbery and getaway. One of defendant's companions confessed after the search that he and two others did intend to rob a bank. On defendant's appeal from conviction for conspiracy to rob, the Supreme Court held that articles found in the car were inadmissible because of an illegal search and seizure.

In State v. Raines, 339 Mo. 884, 98 S.W. 2d 580, 584–585, decided in 1936, the court said:

" * * * It is generally held that upon a lawful arrest the arresting officer may rightfully search the person of the one arrested and take from him articles of evidentiary value *tending to connect him with the commission of the offense for which he is arrested. * * *"*, and that the same was true of the room wherein he was arrested. In that case the court upheld the validity of the search and seizure as being " * * * things of evidentiary value *tending to show defendant's guilt of the offense for which he was arrested * * *."* (Emphasis supplied.)

There is a case note in 26 Mo.L.Rev. 375, which discusses the proposition whether, under Missouri law, so long as there is a lawful arrest, a search made incident thereto is limited neither in its scope, purpose, nor in the kind of evidence which may be searched for and seized. This note points out, at 26 Mo.L.Rev. 379, that to declare that

---

5. It would appear Harris has been overruled by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, but the majority opinion takes the position Chimel is not retroactive, so it is not involved here.

Under the Chimel decision, the search in the case at bar unquestionably would be illegal, but even if Chimel is not retroactive, the search cannot be upheld under the earlier U. S. Supreme Court decisions or under our own decisions.

all searches made either in compliance with a search warrant *or* as an incident to a lawful arrest are reasonable " * * * would confuse the requirement of reasonableness with that of authorization. The constitution of Missouri does not refer to 'unauthorized' searches and seizures. It requires that the power be exercised within the limits of reasonableness [citing Missouri Constitution, Art. I, Sec. 15, that " * * * the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures * * *."]. That same constitution, by setting out detailed requirements for written authorization to search, would seem to indicate that much more is required than a mere arrest made upon the property searched [again citing Missouri Constitution, Art. I, Sec. 15, that " * * * and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the person or thing to be seized, as nearly as may be; nor without probable cause, supported by written oath or affirmation"]. The requirement of description indicates that the scope of the search and the nature of the thing to be searched for must also be limited in order that the search be reasonable. Thus, where a warrant is the authority for a search, the search is limited to those items and that area described in the warrant. Where an arrest is the authority for a search then it would logically follow that the search should at least be related in some manner to the nature and circumstances of the arrest."

The note concludes by saying, 26 Mo.L. Rev. 380, " * * * The enforcement of a * * * rule of law [i. e., the rule about search incident to a lawful arrest] in such a way as to subordinate completely such right [referring to the individual's right of privacy] in favor of the power [referring to the state's power of prosecution] cannot be said to be reasonable and is therefore contrary to the expressed terms of the state constitution."

The above-mentioned case note stems from the decision of the Kentucky Court of Appeals in Benge v. Commonwealth, 321 S.W.2d 247, which is remarkably similar to the present case. There the arrest warrant was for *selling* alcoholic beverages in local option territory. The arrest was made at defendant's home and the house was then searched. Six half pints of gin and eight cases of beer were found in a closet, a refrigerator, and under the stove. Defendant was then charged with and convicted of *possession* of intoxicating beverages. The court held the search and seizure was illegal, holding that the bare fact of lawful arrest in one room of a dwelling is not sufficient justification for an unlimited search of the entire house, and at 321 S.W.2d l. c. 250, pointed out the following:

"However, it is a totally different thing to search a man's pockets, and use against him what they may contain, from ransacking his house for everything which may incriminate him, once a peace officer has gained lawful entry. * * *"

See, also, Terry v. Ohio, 392 U.S. 1, 18, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889, stating that " * * * a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope * * *. The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible."

In the case at bar the officers had no probable cause to make the search they did of defendant's house. I respectfully submit the motion to suppress should have been sustained, the marijuana was unconstitutionally admitted in evidence, and the judgment should be reversed.