**Albert S. JACKSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 55836.

Supreme Court of Missouri,
Division No. 1.

April 12, 1971.

Francis P. Dorsey, St. Louis, appointed attorney for appellant.

John C. Danforth, Atty. Gen., James M. Reed, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal from denial, after evidentiary hearing, of motion under Criminal Rule 27.26, V.A.M.R., to vacate and set aside judgment of conviction of assault with intent to kill with malice aforethought.

Albert Smith Jackson, with five prior felony convictions, was indicted for the felonious assault with malice aforethought of Richard Flynn on February 2, 1968, by shooting him with a .22-caliber rifle. At about 11:30 p. m., February 2, 1968, St. Louis police officers arranged for Officer George Gordon to go to defendant's home, a 3-room flat at 3609 Clarence Avenue, St. Louis, Missouri, to purchase narcotics. Using identified money, Officer Gordon

purchased a tinfoil packet of white, powdery substance which he believed to be narcotics. He showed the substance to other officers who were waiting nearby for him, and all proceeded to defendant's home. They demanded admittance for purposes of arrest; defendant refused and obtained a rifle and shot and wounded Officer Flynn. A siege of the premises by gunfire and tear gas terminated with the arrest of defendant, his wife Janie, and Azell Mason, Raymond Barnes, and Leroy Hall. Following the arrest the premises were searched for suspects, weapons, and narcotics and, after the tear gas cleared, photographs were taken depicting the arrangement and condition of the premises. Defendant did not testify, but his wife denied that he sold the narcotics or shot at the policemen. A jury convicted defendant, the court fixed his punishment at twenty-three years' imprisonment, and the ensuing judgment was affirmed upon direct appeal. State v. Jackson, Mo., 446 S.W.2d 627.

Movant sought relief on charges of ineffective assistance of counsel and overzealous prosecution. He contends the court erred in denying him relief on those grounds, asserting: that he was denied effective counsel in failure of counsel to investigate his case, subpoena witnesses, and file pretrial motions to suppress evidence; and that he was denied a fair and impartial trial by an overzealous prosecutor.

At the hearing, by way of offer of proof, movant showed that if Melvin Leroy Tyler, a penitentiary inmate, were present, he would testify that he was in jail awaiting trial at the same time defendant was and heard defendant request Mr. Curtis Crawford, trial counsel, to subpoena Ozell Mason, Raymond Barnes, and Leroy Hill, and the police department ballistics expert to show that the bullet fragment taken from Officer Flynn was too heavy in caliber to have been fired by a .22-caliber rifle. The offer also covered testimony of Seymour Covington, another penitentiary inmate, to the effect that he assisted Melvin Leroy Tyler in preparation of movant's 27.26 motion and supporting brief.

Albert Jackson testified that Mr. Crawford came to see him twice between his arrest in February and his trial in July. He asserted that Mr. Crawford did not investigate his case "Because he did not subpoena any witnesses. He didn't take any pictures of my home and he failed to interview any of my witnesses and he failed to subpoena two of my witnesses which were incarcerated at the time in the City Jail." The last reference was to Hall, Barnes, and Mason who were in defendant's home at the time of the assault and arrested with him. According to movant, at the time of his trial Hall and Barnes were in the city jail and Mason was at 3117 Northwood, St. Louis, Missouri. He also requested that counsel subpoena George and Will Young, employees of Schaeffer Lumber Company, who were said to have "within a week (prior to the shooting) put a screen mesh on my door for the protection of burglary." The three associates would have said that the police asked all of them, "Who shot the police officer?" One of them could have said who fired the shot at Officer Flynn "if he would have admitted it." Movant wanted the ballistics expert subpoenaed "To determine the weight of the shell. * * * the weight of the caliber of the slug taken from Mr. Flynn would have determined the weight of two .22 caliber shot right from a rifle instead of one." In movant's opinion, a motion "To suppress the evidence of illegal search and seizure * * * would have merit because the weapons obtained in the illegal search, which was made without a search warrant or warrant for my arrest, was used against me in my trial." Also, "he lied to me about my brief on my appeal * * * he claimed it was two hundred something pages long and he needed more money but it was only nine pages of the whole brief "[1]

1. Appellant's brief on direct appeal consisted of nine pages; the trial transcript filed contained three hundred eighty-two pages.

"and he permitted my wife [to be] improperly impeached" after her denial that her husband shot Officer Flynn by permitting an officer to testify in rebuttal that Mrs. Jackson had stated prior to trial that she assumed her husband had fired the shot because he had a gun upstairs.

Movant also stated, without any references, that counsel failed to object to evidence he believed to be immaterial, irrelevant, prejudicial, and hearsay.

In addition to his testimony, movant read into this record from the trial transcript numerous references in the state's case to the narcotics purchase, the use of tear gas, condition of the premises, photographs of his premises, the rifle, and excerpts from the state's argument with respect to the strength of the state's case and the weakness of any defense to the charge.

Curtis C. Crawford, movant's trial counsel, had been a practicing lawyer for seventeen years and at hearing time was district director for the Small Business Administration. He had represented defendant or had some preliminary legal matter with defendant five or six months prior to undertaking defense of the assault charge.

Defendant gave him the names of Mason, Barnes, and Hall. "One of the fellows [Mason], as I recall it, left town or was from out of State * * * I think he was from West Virginia or Kentucky * * *. I never had any contact with him. * * * The other two fellows who were arrested * * * at about the same time as Jackson, and subsequently were released, I had addresses on them and I believe I wrote to them but I don't think I ever talked to either one of them and they never came into the office." He got no response to his letters and one of them was returned.

He and defendant discussed calling the ballistics expert and the trial transcript shows that although called by the state, he was also examined by the defendant, and his testimony was that the fragment taken from Officer Flynn was mutilated to the extent he could neither identify it

nor say from what weapon it might have been fired.

Mr. Crawford went by the house where the shooting occurred. He did not go into the house; he did examine its exterior. He was there "on two, maybe three, occasions and the remainder of my contact was in conversations with the accused and with his wife. * * * I talked on the telephone with her on several occasions and I believe on one, possibly two, occasions * * * in the office." The transcript shows the state to have taken and introduced some twenty-three photographs depicting both interior and exterior of defendant's premises.

As to the Schaeffer Lumber Company employees, " * * * again, I chose—it was my manner of trying the case and I didn't use—he gave me some names. He did say that someone had placed something on the door and I don't recall the exact names right now."

The transcript shows, among its three hundred eighty-two pages, page after page of informed, thorough cross-examination by Mr. Crawford of state's witnesses.

■■■ There is no question that an accused is entitled to effective assistance of counsel, Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; and that such counsel must make reasonable investigation of the facts and of the applicable law "to learn of readily available facts which might have afforded his client a legitimate justiciable defense," Goodwin v. Swenson, W.D.Mo., 287 F.Supp. 166. Note also that a charge of ineffective assistance of counsel can prevail only where counsel's performance "made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court," Cardarella v. United States, 8 Cir., 375 F.2d 222, 230; Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14; or that it "blotted out the essence of a substantial defense," Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113, 117; or that counsel's alleged omissions "cannot be explained on the basis of any knowledgeable choice of tactics,"

People v. Floyd, 1 Cal.3d 694, 83 Cal.Rptr. 608, 464 P.2d 64, 73.

■ Appellant's argument with respect to counsel's alleged failure to investigate acknowledges counsel's letters to witnesses, calls to defendant's wife, conversations with defendant, examination of the scene of the crime, and numerous pictures of the premises in evidence. He fails to suggest what additional investigation he would have had counsel make, and the trial record shows by his vigorous and detailed cross-examination that counsel was prepared. As a consequence, it may not be said that the court erred in failing to find counsel ineffective for alleged failure to investigate.

■ With respect to suggested witnesses Hall, Mason, and Barnes, the record shows that counsel made futile attempts by mail to locate them, an indication that they were not likely to be found by subpoena, and appellant recognizes they could be helpful to him only if one of them would admit he did the shooting, an unlikely possibility. Such circumstances do not dictate a finding of failure of counsel with respect to securing witnesses. See State v. Woolbright, Mo., 449 S.W.2d 602, where counsel's inability to locate a suggested witness by use of telephone and mail was held not to constitute ineffective assistance of counsel.

■ With respect to the Schaeffer employees, there is no showing that their testimony would provide a defense, and counsel, in an exercise of judgment, did not call them, apparently for that reason. Such criticism of tactics and strategy "is not in itself sufficient to support a charge of inadequate representation." Cantrell v. United States, 8 Cir., 413 F.2d 629, 632. See also State v. Dean, Mo., 400 S.W.2d 413, 416. Note also that "the calling or not calling of witnesses is a matter normally within the realm of the judgment of counsel." Poole v. United States, 8 Cir., 438 F.2d 325, 1971.

■ Appellant's argument with respect to failure to file a motion to suppress is that the trial record indicates some thirty-five exhibits were introduced by the state; that all but one (the bullet fragment) were taken from his home, some the day following arrest;[2] that no search warrant was obtained; that such is the type search condemned in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, "and it would appear that a proper Motion would have merit as to most if not all of this highly prejudicial evidence."

There are several defects in appellant's argument:

First, Chimel v. California, supra, was decided after the search in question and this trial, and it has not been given retroactive application. United States v. Bennett, 2 Cir., 415 F.2d 1113; Lyon v. United States, 5 Cir., 416 F.2d 91; Williams v. United States, 9 Cir., 418 F.2d 159; Porter v. Ashmore, 4 Cir., 421 F.2d 1186; United States v. Blassick, 7 Cir., 422 F.2d 652; State v. Norris, Mo., 460 S.W.2d 672.

Second, at least twenty-three of the thirty-five exhibits were photographs of, rather than items taken from, the premises. Appellant does not undertake to demonstrate, as opposed to his assertion, how any of the remaining exhibits were improperly seized, and this court does not assume the burden of sifting through them to determine if any are proper subjects of a motion to suppress.

Third, it reasonably appears from the record that any such items were taken from defendant's premises as an incident to his arrest, and under the authorities applicable to this case they were not subject to suppression by motion. State v. Novak, Mo., 428 S.W.2d 585; State v. Norris, supra; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Harris v. United States, 331 U.S. 145, 67 S.Ct.

2. Note that the officers demanded entry to defendant's premises and the shooting occurred after 11:30 p. m., February 2, 1968. His arrest occurred in the early morning hours of the following day. There is no indication that any visit to defendant's premises occurred on February 4, 1968, the "day following arrest."

1098, 91 L.Ed. 1399. It may not be said on this record that the court erred in failing to find ineffective assistance of counsel for failure to file a motion to suppress.

On his charge of denial of fair trial "by an overzealous prosecutor," appellant emphasizes references to narcotics, narcotics sales, and paraphernalia in voir dire, opening statement, closing argument, and state's witnesses' testimony, and attempted introduction of physical evidence; evidence of the interior of his premises, use of tear gas; use of "some 35 irrelevant or immaterial exhibits"; and argument designed to incite prejudice of the jury.

There is no question that it is as much the prosecutor's duty to "refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one," Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314; Hall v. United States, 5 Cir., 419 F.2d 582. However, appellant does not undertake to demonstrate the inadmissibility of any of the mentioned items of evidence. In such circumstances, references to them as items in evidence, whether upon voir dire, in statements, arguments, or witnesses' testimony, would not be outside the record, and such a record does not, of itself, demonstrate any overreaching by the state's attorney. Absent a showing of inadmissibility, it must be presumed that the evidence was properly before the jury and the prosecutor's use of such evidence for purposes of screening jurors, and arguing and proving the state's case would be proper. Mahler v. State, Okl.Cr., 465 P.2d 765, cited by appellant, is to be distinguished because on direct appeal it was obvious that conviction had been obtained through the use of so much "inadmissible and highly prejudicial" evidence that one would think the case was a narcotics trial instead of receiving stolen property. There was no such confusion in Jackson's trial because the evidence pertaining to purchase of narcotics was properly admitted as logically relevant to the subsequent shooting when his arrest was attempted. State v. Jackson, supra, 446 S.W.2d l. c. 629 [1].

The record shows that on each of appellant's contentions, there was conflicting evidence and permissible conflicting inferences. The trial court has resolved the conflicts, and its findings and judgment in denial of relief may not, on this record, be said to be "clearly erroneous." Crosswhite v. State, Mo., 426 S.W.2d 67, 70 [1].

Accordingly, the judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEMPLE, Special Judge, concurs.

SEILER, P. J., concurs in result in separate opinion filed.

BARDGETT, J., concurs and concurs in separate opinion of SEILER, P. J.

HOLMAN, J., not sitting.

SEILER, Presiding Judge (concurring in result).

While I agree with the result reached under the facts of this case, I am unable to agree with the test used by some of the authorities cited on the subject of the standards by which we judge ineffective assistance of counsel. We see a good many claims of ineffective assistance of counsel in post-conviction motions. I continue to have grave doubts about the usefulness of the so-called "farce and mockery" test and believe it offers little, if any, guide to the practicing lawyer who is appointed to represent an indigent defendant. "Farce and mockery" are so extreme and so rare that they may mislead a lawyer into believing the court intends to set some lower standard for representing indigents than it does other litigants. As has been said many times, appointed counsel is required to

exercise the same care as he would if he were being paid. He should be aware that he is expected to exercise the skill and knowledge which normally prevails at the time and place. Professional competence is expected, and reasonably so, by the public, in any profession. I do not know of any other profession where professional competence is judged on the basis of whether the professional conduct has reduced the procedure or effort involved to a "mockery or farce" of what it should have been. I do not believe any such loose or extreme standard should be applied to the legal profession, either, and this is especially so in the area of pre-trial preparation. "Mockery and farce" does not fit an analysis of whether a lawyer has used normal competence in getting ready for trial. If all that lawyers are required to do for the clients is to bestir themselves to the point that what happens is not a "mockery or farce", then our standards are much lower than we realize. I do not believe they are that low and would be in favor of eliminating "mockery or farce" as worthy of being a test of ineffective assistance of counsel.